## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD KAMUCK, | : | Civil No. 4:11-CV-1425 |
| | : | |
| Plaintiff, | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | (M. J. Carlson) |
| SHELL ENERGY HOLDINGS GP, LLC., | : | |
| SHELL ENERGY HOLDINGS LP, LLC, | : | |
| and SWEPI, LP (d/b/a SHELL WESTERN | : | |
| EXPLORATION AND PRODUCTION, LP) | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

At bottom, this civil action represents a conflict between two quests:  The Plaintiff's quest for solitude and the Defendants' quest for natural gas.

This case comes before the Court on two motions filed by the Defendants:  a motion to dismiss this civil action,(Doc. 11), and a separate, but closely related, motion to strike claims from this lawsuit. (Doc. 13)  With respect to these two motions, the well-pleaded facts set forth in the Plaintiff's complaint recite as follows:

The Plaintiff, Edward Kamuck, is a totally disabled Vietnam War veteran. (Doc. 1, ¶1)  In December of 2009, Kamuck purchased a 93 acre tract of land in rural Tioga County.  (Id., ¶17.)  This tract of land was part of a larger property formerly known as the Copp Property. (Id., ¶8.)  The Copp Property was a 323 acre property in Tioga

County, which was subject to the Copp Lease, an Oil and Gas Lease, a lease which

permitted removal of mineral resources, contained a ten-year primary term and, if

certain mineral extraction activities were initiated during that primary term, provided

the Lessee with a fee simple determinable. (Id. at ¶¶ 8-10.)  The Copp Lease also

provided the Lessee with a right to unitize[1] the Copp Lease with other leases for

_____

[1]Unitizing is described in the following terms:

Because there may be a pool of oil under several tracts of land with
each tract having a different ownership, yet all of the oil might be
removed by a single well on one of the tracts as a result of its fluidity
to the detriment of the owners of the other tracts, a need has arisen for
laws providing for the pooling of diverse interests into one or more
drilling units for the production of oil.  A "pool," for purposes of a
unitization act, has been deemed to include commingled oil and gas
well formations constituting a single and separate natural reservoir
characterized by a single pressure system, so that the production of
petroleum from one part of the pool affects the reservoir pressure
throughout its extent.  "Pooling" refers to the bringing together of two
or more small or irregularly shaped tracts of land to form a drill site in
connection with a program of uniform well spacing with the
arrangement being essentially a species of joint venture whereby the
various owners of the tracts pooled join to drill a well and to share in
the benefits to be expected.  The primary legal consequence of
pooling oil and gas leases is that production and operations anywhere
on the pooled unit are treated as if they have taken place on each tract
within the unit.  An oil and gas lessee's pooling decision will be
upheld unless the lessee pools in bad faith.  Where a lessee pools oil
and gas leases in good faith, the lessee is relieved of the obligation to
reasonably develop each tract separately, or to drill off-set wells on
other tracts included in the unit to prevent drainage by a well on one
or more of such tracts.  If oil and gas leases are not pooled in good
faith, production will be considered to take place only on the actual
tract upon which it occurs, and production from a unit well will not

production from the Onondaga, Oriskany, or deeper formations. (Id. at ¶ 13.) The rights conferred by the original Copp lease, however, did not reach, or speak to, extraction of natural gas from Marcellus Shale formations. When the Copp Property was later subdivided into 5 properties, including the land purchased by the plaintiff, each property owner took the property subject to mineral rights conferred by the Copp Lease.( Id. at ¶¶ 17, 18.)

By 2010, the Defendants were lessees under the Copp Lease, and sought to expand their mineral rights to include extraction of natural gas from Marcellus Shale formations. Towards that goal, the Defendants approached each of the owners of a property subdivided from the original Copp Property and asked these property owners to execute an Amendment and Ratification ("Amendment") to the Copp Lease, authorizing the extraction of these Marcellus Shale resources on the property owner's

---

maintain off-site leases.  "Unitization or "unit operation" represents the development and operation of an oil pool as a unit, and involves the consolidation or merger of all of the interests in the pool and the designation of one or more of the parties as operator.  The unitization of oil and gas production permits the entire field or a substantial part of it to be operated as a single entity without regard to surface boundary issues. Unitization effects a merging of all the involved gas and oil leases into one contract and a vesting in all the lessors of a right to participate in any royalty produced on any tract.

38 Am. Jur. 2d. § 172(2012).

land, subject to a unitizing agreement. (Id., Exhibit 8.)   All of the property owners who held lands formerly encompassed by the Copp Lease signed the Amendment to the Copp Lease with one exception–the Plaintiff, Edward Kamuck.   Accordingly, those adjoining properties are subject to the Copp Lease, as amended, and the Defendants have commenced drilling and extraction of natural gas from these properties under the terms of the Amended Copp Lease.   Because Kamuck refused to enter into the Amended Copp Lease, the original 10-year lease on his property expired by its own terms on June 12, 2011.

The Defendants then began natural gas extraction from the Marcellus Shale deposits found beneath the properties of adjoining land owners who had signed the Copp Lease Addendums, using a technique called "fracking"[2], in which wells are drilled and shale deposits are fractured by pumping chemicals known as "fracking fluid" into the wells, thus releasing the natural gas trapped within the shale deposits. After Defendants commenced Marcellus Shale extraction and production on these adjoining properties, on August 3, 2011, Kamuck filed this civil complaint. (Doc. 1) In his complaint, Kamuck alleges that the activities of the Defendants, who are using "fracking" technology to extract natural gas from Marcellus Shale on these adjoining

---

[2]"Fracking" or "hydrofracturing is a process in which pressurized fluids are used to dislodge and release natural gas from deep underground formations." Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 510 (M.D.Pa. 2010).

properties, is conducted in a manner that is harmful both to the Plaintiff and his property. Kamuck's complaint brings ten separate claims, sounding both in contract and in tort. Thus, Kamuck has brought a claim against the Defendants for breach of contract under the Copp Lease, (id., Count 1); for breach of a duty of good faith and fair dealing (id., Count 2); declaratory judgment counts seeking declarations interpreting and invalidating aspects of the Copp Lease and amendments, (id., Counts 3,4 and 5); a claim for anticipatory trespass, (Id., Count 6); a count alleging that the Defendants' activities constitute a private nuisance, (id., Count 8); a count alleging negligence by the Defendants in their Marcellus Shale drilling operations, (id., Count 9); and a count asserting strict liability based upon the theory that natural gas extraction through "fracking" is an ultra hazardous activity, (id., Count 10). [3]

The Defendants have now moved to dismiss this complaint in its entirety, alleging that none of Kamuck's tort or contract claims state a claim upon which relief may be granted. (Doc.11) In addition, the Defendants have filed a motion to strike a series of averments from the complaint relating to punitive damages, attorneys' fees, and claims for emotional distress. (Doc. 13) These motions have been fully briefed by the parties, and are ripe for resolution.

---

[3]The complaint also contains a count for injunctive relief, Count 7, which we do not construe as a free-standing claim but rather as an alternate prayer for relief.

For the reasons set forth below, it is recommended that the motion to dismiss be granted with respect to the Plaintiff's contract-based claims, as well as the Plaintiff's anticipatory trespass claim, negligence *per se* claim, and gross negligence claim, but denied with respect to those remaining claims that sound in tort.  As for the motion to strike, it is recommended that, with the exception of the Plaintiff's contract based claims which should be dismissed and stricken, this motion be denied at this stage of the litigation.

## II.   Discussion

### A.   Motion to Dismiss Rule 12(b)(6)– The Governing Legal Standards

The Defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008) and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form

of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In

Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words,

> a complaint must do more than allege the plaintiff's entitlement to relief.
> A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

## B.   Motion to Strike, Rule 12(f), the Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure, in turn, governs motions to strike pleadings and provides, in part, that:

> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

While rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that discretion is

guided by certain basic principles.  Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982).  As one court has aptly observed:  "striking a party's pleadings is an extreme measure, and, as a result, . . .  '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil § 1380 at 783 (1969)).  See also Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D.Mo.1993);  2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000)." Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).  In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party.  Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001).

## C.    Kamuck's Breach of Contract Claims Based Upon The Copp Lease and Addendums Should Be Dismissed

This is a diversity lawsuit, alleging breach of contract and tort claims arising out of the Defendant's natural gas extraction activities in Tioga County, Pennsylvania. As a federal court exercising diversity jurisdiction in this case, we are obliged to apply the substantive law of Pennsylvania to this dispute. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000).

Turning first to the Defendants' motion to dismiss the complaint, viewing that complaint through the prism of Pennsylvania case law, and considering the counts of Kamuck's complaint that assert breach of contract claims relating to the Copp Lease, we note that the law governing the interpretation of contracts in Pennsylvania is familiar and well-settled. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980) (citation omitted); Mace v. Atl. Ref. & Mktg. Corp., 785 A.2d 491, 496 (Pa. 2001). A contract is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 (3d Cir. 1991). Under Pennsylvania law, ambiguous contracts are interpreted by the trier of fact, and unambiguous contracts are interpreted by the court as a matter of law. Mellon Bank, 619 F.2d at 1011 n.10.

The United States Court of Appeals for the Third Circuit has had occasion to summarize Pennsylvania law regarding the interpretation of contractual language and terms, stating that:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the

parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d Cir. 2008) (internal citation omitted) (citing Murphy v. Duquesne Univ., 777 A.2d 418, 429-30 (2001)). Furthermore, it is hornbook law that courts must, whenever possible, read contract provisions so as to avoid ambiguity. Id. at 247. Where a contract is not ambiguous, but is instead subject to only one reasonable interpretation, it is appropriate for a district court to resolve the issue of interpretation as a matter of law. See Norfolk S. Ry. v. Reading Blue Mountain & N. Ry., 346 F. Supp. 2d 720, 725 (M.D. Pa. 2004).

With these legal benchmarks in mind, we find that the plaintiff simply is not able to maintain an action against the Shell Defendants for their Marcellus Shale natural gas extraction activities on adjoining properties based upon a breach-of-contract theory. This breach-of-contract claim fails for a number of reasons.

First, nothing in the Plaintiff's complaint alleges an actionable breach of the Copp Lease, as it applied to the Plaintiff and his property. Quite the contrary, it is entirely undisputed that the original Copp Lease, the only agreement between the Plaintiff and Defendants, did not address in any fashion Marcellus shale extraction activity. Furthermore, nothing in the original Copp Lease that was conveyed to the Plaintiff when he bought a parcel of the Copp property permitted the Plaintiff to regulate, restrict or limit future choices, agreements and decisions by other adjoining land-owners who purchased other parcels of the Copp property. Moreover, that original lease, by its terms has expired as to Kamuck's property. Therefore, there is no legally binding contract or lease agreement between these parties at present.

Instead, the only contracts which currently apply to the activities of the Shell Defendants are the Copp Lease Addendums that were entered into by the Shell Defendants and other adjoining land owners. Those lease addendums expressly allow the Shell Defendants to extract natural gas from Marcellus Shale formations on these adjoining properties. Kamuck was offered an opportunity to enter into these agreements, but declined to do so. Therefore, the actions taken by the Defendants on these neighboring properties are absolutely consistent with the lease agreements between the Defendants and the adjoining property land owners, agreements which Kamuck refused to join.

In sum, the unambiguous terms of these written agreements reveal that Kamuck never had a lease agreement with the Shell Defendants governing the extraction of natural gas from Marcellus Shale and never had any agreements which restricted the activities of neighboring land-owners with respect to Marcellus Shale extraction. Furthermore, Kamuck's original Copp Lease with the Defendants has expired, and Kamuck expressly declined to enter into any new contractual arrangements with the Shell Defendants. Since Kamuck currently has no contractual relationship with the Shell Defendants, and never enjoyed a contractual agreement with them relating to Marcellus Shale natural gas extraction, he simply may not maintain a breach of contract claim against these Defendants based upon his former lease agreements. Nor can Kamuck assert any contractual rights based upon the Copp Lease Addendums, agreements which he declined to sign. Kamuck is not a party to those agreements, and accordingly may not endeavor to assert any rights under these agreements. Evans v. Otis Elevator, 168 A.2d. 573, 575 (Pa. 1961). Therefore, Kamuck simply has no legal basis for asserting a breach of contract claim against the Shell Defendants based upon their activities on adjoining properties, activities undertaken in conformance with contracts between Shell and these neighboring property owners, contracts as to which Kamuck is not a party. Count I, the Plaintiff's breach of contract claim, thus, fails to state a claim upon which relief may be granted, and should be dismissed.

This conclusion regarding Kamuck's breach of contract claim, in turn, dictates the course we must follow with respect to Kamuck's companion claim in Count II of his complaint, a claim of breach of the duty of fair dealing. Under Pennsylvania law, such a duty of fair dealing is entirely dependent upon the existence of a contractual relationship. In short, Pennsylvania law grafts onto all contracts a repsonsibility by the contracting parties to deal fairly with one another. However, Pennsylvania law does not recognize an independent, and free-standing, duty of fair dealing outside a contractual context. As we have previously explained:

> Whether express or implied, the covenant of good faith and fair dealing acts as a term of the contract, and that covenant arises from the contract itself. See Ash v. Cont'l Ins. Co., 593 Pa. 523, 932 A.2d 877, 884 (2007); Birth Center, 787 A.2d at 385; Murphy, 777 A.2d at 434 & n. 11; Gray, 223 A.2d at 11 ("We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action in assumpsit will lie."); Cowden v. Aetna Cas. & Sur. Co., 389 Pa. 459, 134 A.2d 223, 229 (1957).

> Because the covenant of good faith and fair dealing arises from the contract and not due to the mere relationship of the parties-as, for example, a fiduciary duty-a breach of the covenant sounds in contract, not tort. See Ash, 932 A.2d at 884. There is, however, no independent cause of action for a breach of the covenant of good faith and fair dealing-arising in contract-in Pennsylvania because such a breach is merely a breach of contract. See Birth Center, 787 A.2d at 385-86; Gray, 223 A.2d at 11. It has been said that a breach of the implied covenant of good faith and fair dealing merges with a breach of contract claim. See Meyer v. Cuna Mut. Group, No. 03-CV-602, 2007 WL 2907276, at *14-15 (W.D.Pa. Sept. 28) (citing cases).

<u>Zaloga v. Provident Life and Acc. Ins. Co. of America</u>, 671 F.Supp.2d 623, 630-31 (M.D.Pa. 2009).

Since there is no separate cause of action under Pennsylvania law for breach of the duties of good faith and fair dealing; <u>Chanel, Inc. v. Jupiter Group, Inc.</u>, Civ. No. 3:04-CV-1540, 2006 U.S. Dist. LEXIS 43363, at *6 (M.D. Pa. June 27, 2006); <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp. 2d 517, 549 (D.N.J. 2004); <u>Blue Mt. Mushroom Co. v. Monterey Mushroom, Inc.</u>, 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002); <u>LSI Title Agency, Inc. v. Eval. Servs., Inc.</u>, 951 A.2d 384, 391 (Pa. Super. Ct. 2008), a claim for breach of the duties of good faith and fair dealing is merely a claim for breach of the underlying contract. <u>Zaloga v. Provident Life and Acc. Ins. Co. of America</u>, 671 F.Supp.2d 623, 630-631 (M.D.Pa. 2009). Here, we have concluded that the Plaintiff may not maintain a breach of contract claim because he has no enforceable contract with the Defendants. Therefore, it follows that a claim of a breach of duty of good faith, which is wholly dependent upon the existence of a contractual relationship, must also fail.

In any event, the only extant contracts in this case relating to Marcellus Shale natural gas extraction are the Copp Lease Addendums, which Kamuck declined to sign, but which expressly authorized these drilling activities on adjoining parcels of land. Where, as here, the activity complained of is expressly permitted under the

contract, a bad faith claim simply cannot be sustained. <u>Snyder Bros., Inc. v. People's</u> <u>Natural Gas Co.</u>, 676 A.2d 1226, 1231 (Pa. Super. Ct. 1996) (rejecting claim of bad faith pooling where unitization agreement "specifically provided" for unitization). Accordingly, Count 2 of the Plaintiff's complaint, the Plaintiff's breach of duty of good faith and fair dealing claim, fails to state a claim upon which relief may be granted, and should also be dismissed.[4]

### D.   <u>Kamuck May Not Maintain a Trespass Claim For Damages Based Upon an Anticipatory Trespass</u>

Kamuck has also lodged a claim, which he characterizes as an "anticipatory trespass" claim, in Count 6 of his complaint. This count does not allege an actual trespass by the Shell Defendants onto Kamuck's property; rather, it merely asserts that Kamuck believes that the Defendants may in the future trespass on, or under, this property. The Defendants have moved to dismiss this particular claim, arguing that the Pennsylvania courts do not recognize the tort of anticipatory trespass. The Plaintiff, in turn, appears to acknowledge the paucity of Pennsylvania case law, but

---

[4]In our view, these findings that Kamuck may not maintain a breach of contract claim in this litigation, also address and resolve his declaratory judgment claims set forth in Counts 3 through 5 of his complaint. These various counts invite the Court to interpret and make declaratory judgments regarding the meaning, force and effect of these contracts in the current dispute between Kamuck and the Shell Defendants. In the absence of an enforceable contractual relationship between the parties–something which we find does not exist here–there simply is nothing for the Court to declare or declaim about.

argues that other jurisdictions have entertained the possibility of an anticipatory trespass claim, particularly when considering claims for injunctive relief.  See Ritter v. Carroll's Foods of Midwest, Inc., 50 F.Supp.2d. 876 (N.D. Iowa 1999)(interpreting Iowa law and concluding that there is no cause of action for damages arising from anticipatory trespass, but allowing for the possibility of injunctive relief on an anticipatory trespass theory).[5]

Like the parties, we have found no Pennsylvania cases which permit recovery on an anticipatory trespass theory of liability.  Moreover, when we endeavor to assess whether the Pennsylvania courts might embrace such a claim, we are struck by the fact that, while Pennsylvania recognizes the tort of trespass, it is well-settled that: "Trespass is a strict liability tort, 'both exceptionally simple and exceptionally rigorous.' Prosser on Torts at 63 (West, 4th ed.1971).  Under Pennsylvania law, it is defined as an 'unprivileged, intentional intrusion upon land in possession of another.' Graham Oil Co. v. BP Oil Co., 885 F. Supp. 716, 725 (W.D.Pa.1994) (citing Kopka v. Bell Tel. Co., 371 Pa. 444, 91 A.2d 232, 235 (1952))." Boring v. Google Inc., 362 F. App'x 273, 280 (3d Cir. 2010)(emphasis added).

---

[5]The Plaintiff also cites cases involving a separate tort doctrine, anticipatory nuisance, to support this claim.  We find, however, that the doctrines of nuisance and trespass are analytically different, and note that the Plaintiff's complaint, which contains a separate count of nuisance, seems to also tacitly acknowledges this important legal distinction.

Given this view that, under Pennsylvania law, the tort of trespass is both "both exceptionally simple and exceptionally rigorous," <u>Prosser on Torts</u> at 63 (West, 4th ed.1971), and requires "unprivileged, intentional intrusion upon land in possession of another," <u>Graham Oil Co. v. BP Oil Co.</u>, 885 F. Supp. 716, 725 (W.D.Pa.1994), we find that Kamuck's anticipatiory trespass claim, which does not allege an actual intrusion onto Kamuck's lands, does not state a cause of action under the laws of Pennsylvania.  In sum, the Plaintiff's "anticipatory trespass" claim invites us to broadly expand a cause of action that the Pennsylvania courts urge should only be applied in an "exceptionally rigorous" fashion.  Further, Kamuck urges us to convert this tort, which requires an "unprivileged, intentional intrusion upon land in possession of another," into an entirely different cause of action where no physical intrusion would be necessary.  In our view, Pennsylvania law does not seem to contemplate the expansion of this narrowly defined tort.  Therefore, we recommend that this anticipatory trespass claim be dismissed, without prejudice to Kamuck alleging facts–if he can–which give rise to the tort of trespass, a tort which is plainly recognized under Pennsylvania law.

### D.   **Kamuck's Remaining Tort Claims Are Not Subject to Wholesale Dismissal on the Pleadings**

In contrast to Kamuck's breach of contract and anticipatory trespass claims, the Plaintiff's remaining tort claims cannot be wholly disposed of as legally insufficient

on the pleadings.  These remaining tort claims fall into three categories:  negligence (Count 9), private nuisance (Count 6), and strict liability due to an ultra hazardous condition (Count 10).

In assessing the legal viability of these tort claims we begin with the proposition that Pennsylvania courts have long recognized that adjoining property owners owe one another a duty of care, and have since the 18th century imposed civil tort liability in a variety of settings upon persons who engage in activities on their own properties which cause harm to their neighbors.  See Fogle v. Malvern Courts, Inc., 554 Pa. 633 722 A.2d 680(1999)(discussing history of adjoining landowner liability in Pennsylvania).  Moreover, the nature of tort liability under Pennsylvania law often entails an assessment of disputed factual issues, a factor which frequently precludes the court from making initial judgments on these questions as a matter of law.  See generally, Surace v. Caterpillar, Inc., 111 F.3d 1039 (3d Cir. 1997).  With these guiding principles in mind, we turn to a consideration of the specific tort claims advanced by the Plaintiff.

### 1.    Negligence Claims

At the outset, in his complaint Kamuck alleges that the Defendants have negligently conducted their drilling and "fracking" operations, and specifically contends that:

Defendants owe a duty of care to Plaintiff to responsibly drill, own and operate Defendants' gas wells and to prevent releases, spills, sprays, emissions, discharges and flowback of hazardous chemicals and combustible gases and to prevent explosions and fires caused by or related to Defendants' drilling and production activities.

Defendants owe a duty of care to Plaintiff to take all measures necessary to inform and protect the public, including Plaintiff, from the contamination of water supplies and exposure to hazardous chemicals and combustible gases.

Defendants, including their officers, agents and/or employees, knew or in the exercise of reasonable care should have known, their operations would result in the release or the threat of release of hazardous chemicals and combustible gases.

Defendants, including their officers, agents and/or employees, knew or in the exercise of reasonable care should have known, of the dangerous, offensive, hazardous or toxic nature of their operations.

Defendants, including their officers, agents and/or employees, knew or in the exercise of reasonable care should have known, of the dangerous, offensive, hazardous or toxic nature of the hazardous chemicals and combustible gases released or to be released by Defendants, and that they were capable of causing serious personal injury to Plaintiff and other persons coming into contact with them, polluting the water supplies of Plaintiff and others, damaging property (including the Kamuck Property) and causing natural resource damage.

Defendants, including their officers, agents and/or employees, knew or in the exercise of reasonable care should have known, that they must take reasonable precautions and measures to prevent or mitigate the releases, spills, sprays, emissions, discharges and flowback of hazardous chemicals and combustible gases so that no harm is suffered by the public, including Plaintiff, and no property is damaged, including the

Kamuck Property, as a result of Defendants' drilling and production activities.

Defendants, including their officers, agents and/or employees, knew or in the exercise of reasonable care should have known, that the releases, spills, sprays, emissions, discharges and flowback of hazardous chemicals and combustible gases caused by Defendants' conduct, and the resultant harm to Plaintiff and his property (Kamuck Property), are foreseeable and inevitable consequences of Defendants' acts and/or omissions in the manner in which they engage in their drilling and production activities.

Defendants and their officers, agents and/or employees, in furtherance of their drilling and production operations – for example, on the Knowlton 303 Unit, the Fish 301 Unit and other properties – have caused hundreds of diesel trucks and other vehicles to operate at all hours of the day and night.

Defendants' vehicles, among other things, create noise and emit fumes and kick up dirt and dust particles on the unpaved dirt roads they use, including Mudge Road, the unpaved dirt road in front of Plaintiff's residence (on the Kamuck Property).

Further, upon information and belief, Defendants and/or their agents use fracking fluid in their efforts to settle the dirt and dust on the unpaved dirt roads they use, including Mudge Road, the unpaved dirt road in front of Plaintiff's residence (on the Kamuck Property).

The fluid sprayed by Defendants and/or their agents on the unpaved dirt roads flows into and collects in the drainage ditches on the side of the roads and has a film over it when it sits in the ditches and slowly seeps into the ground.

The fluid sprayed by Defendants and/or their agents on the unpaved dirt roads is draining into the creek that runs through the Kamuck Property and is leeching into the ground on the Kamuck Property.

Plaintiff is a totally disabled Vietnam war veteran and the dust, dirt and noise created by Defendants' almost non-stop operation of vehicles on the unpaved dirt road in front of Plaintiff's residence (on the Kamuck Property) makes breathing difficult for Plaintiff and makes it impossible for Plaintiff to sleep at night.

\*\*\*\*\*\*\*\*\*\*\*

Defendants' acts and/or omissions as alleged herein are the direct and proximate cause of the damages and injuries to Plaintiff and his property (the Kamuck Property).

(Doc. 1, ¶¶ 125-139)

In contrast to the specific factual detail recited in this count of his complaint, Kamuck's legal theories of liability are presented in a somewhat more murky fashion, with the Plaintiff's complaint seemingly articulating and conflating three grounds of negligence liability: simple negligence, negligence *per se*, and gross negligence.  In their motion to dismiss, the Defendants challenge each of these three grounds of liability, arguing that Kamuck's complaint fails to state a claim upon which relief may be granted under any of these proffered legal grounds of tort liability.

At the outset, we believe that Count 9 of the Plaintiff's complaint adequately states a simple negligence claim under Pennsylvania law.  "In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish: (1)

a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.  Morena [v. South Hills Health Sys., 462 A.2d 680, 684 n. 5 (Pa. 1983)] (citing Prosser, Law of Torts § 30, at 143 (4th ed. 1971)).” Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993).  While the latter three elements of this negligence standard, breach of duty, causation and damages, are fact-bound determinations, the threshold issue of whether a duty of care is owed presents a question of law for the court to determine. Id.

In this case, we conclude that the Plaintiff's complaint adequately pleads the elements of a negligence claim.  That complaint outlines a duty of care owed by the Defendants arising out of their drilling and natural gas extraction activities, activities that allegedly involve the use of potentially toxic “fracking” chemicals.  The complaint further asserts a breach of that duty through the negligent discharge of these chemicals on the Plaintiff's property, and on road surfaces adjoining the property, surface discharges that run off into streams that enter the Plaintiff's property.  Kamuck further alleges that he suffers identifiable harms as a result of what he claims to be the negligent handling of these toxic chemicals by the Defendants, and contends that these harms are caused by the Defendants' negligence.  At this point, where our analysis of the Plaintiff's case is limited to an assessment of the well-pleaded allegations set forth

in the complaint, we believe that these factual assertions satisfy all of the elements of a negligence claim under Pennsylvania law.  Therefore, we recommend that the Court deny the Shell Defendants' motion to dismiss this negligence claim.

While we conclude that this simple negligence claim should proceed forward, we believe that the Defendants' objections to any claims based upon any theory of "gross negligence" or "negligence *per se*" are well founded, and these claims should be dismissed.  At the outset, to the extent that Kamuck endeavors to advance a claim of "gross negligence" as an independent cause of action, it is well-settled that "that cause of action is not recognized under Pennsylvania law."  <u>Fiorentino v. Cabot Oil & Gas Corp.</u>, 750 F.Supp.2d 506, 513 (M.D.Pa. 2010).  Rather, the term "gross negligence" is simply viewed as a particularly pejorative way of describing negligent behavior, and as a factor which might support a claim for punitive damages, but not as a separate cause of action.  "Therefore, to the extent that [a] Complaint can be construed to assert a *cause of action* for gross negligence we sh[ould] dismiss [the] Count . . . as a cause of action. However, . . . , we sh[ould] allow Plaintiffs to retain the pertinent allegations . . . to support their claim for punitive damages."  <u>Id.</u> at 514 (emphasis in original).

Similarly, we find that the doctrine of negligence *per se* is not properly pled or proven here.  As this Court has noted:

Negligence *per se* is a tool with which a plaintiff establishes two of the four required elements of a negligence claim: duty and breach. See J.E.J. v. Tri–County Big Brothers/Big Sisters, 692 A.2d 582 (Pa.Super.1997). In Pennsylvania, negligence *per se* is defined as:

conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se* .... In order to prove a claim based on negligence *per se,* the following four requirements must be met: (1) the purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally; (2) The statute or regulation must clearly apply to the conduct of the defendant; (3) The defendant must violate the statute or regulation; (4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

Wagner v. Anzon, Inc., 453 Pa.Super. 619, 684 A.2d 570, 574 (Pa.Super.1996) (internal citations omitted).

Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 515 -516 (M.D.Pa. 2010).

Here, we find on the current state of the pleadings that Kamuck may not avail himself of this legal tool to establish two of the four required elements of a negligence claim:  duty and breach.  In fact, a negligence *per se* claim fails in this case because Kamuck's complaint:  (1) has not articulated any breaches of statutes designed to protect persons like the Plaintiff; (2) has not alleged well-pleaded facts showing that the statutes apply to the Defendants; and (3) has not shown any statutory violation which was the proximate cause of some injury to the Plaintiff.  Therefore, in the absence of further well-pleaded allegations which meet these specific elements, the negligence *per se* doctrine has no application here.

-26-

## 2.   Strict Liability

In Count 10 of his complaint, Kamuck asserts a claim of strict tort liability, based upon the assertion that hydrofracturing drilling operations are ultra hazardous activities which give rise to strict tort liability. (Doc. 1, ¶¶ 144-148)  Defendants, in turn, have moved to dismiss this count arguing that, as a matter of law, there is nothing abnormally dangerous or ultra hazardous about natural gas extraction through "fracking."

In considering these competing views of the nature of strict tort liability in this particular field, we do not write upon a blank slate.  Quite the contrary, a number of cases have examined the application of the doctrine of strict tort liability in this setting.  See e.g., Tucker v. Southwestern Energy Co., No. 11-44, 2012 WL 528253 (E.D. Ark. Feb. 17, 2012); Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010).  From these cases, a legal consensus has emerged.

First, it is generally agreed that Pennsylvania recognizes a strict liability cause of action in tort for abnormally dangerous and ultra hazardous activities.  See Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010).  In this regard:

[T]he Superior Court of Pennsylvania, in several cases, has adopted Sections 519 and 520 of the Restatement (Second) of Torts for determining whether an activity is abnormally dangerous. See, e.g., Diffenderfer v. Staner, 722 A.2d 1103, 1107 (1998) (adopting §§ 519 and 520 of the Restatement(Second) of Torts); Melso, 576 A.2d at 1002–03 (same); Smith v. Weaver, 445 Pa.Super. 461, 665 A.2d 1215, 1219–20 (1995) (same); Albig, 502 A.2d at 662–63 (same).

Section 519 of the Restatement states, in pertinent part, that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm ... of another resulting from the activity, although he exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519(1) (1977); see also Diffenderfer, 722 A.2d at 1108 (1998) (applying this part of the Restatement).   Section 520 enumerates a list of factors the court should consider in determining whether an activity is abnormally dangerous.   These factors are as follows:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts §§ 520 (1977).

Banks v. Ashland Oil Co.,127 F.Supp.2d 679, 680-681 (E.D.Pa. 2001).

Applying the Restatement's multi-faceted test, courts agree that the question of whether a specific activity is abnormally dangerous and, thus, gives rise to strict tort liability, is a question of law for the court to resolve.  See e.g., Tucker v. Southwestern Energy, Co., No. 11-44, 2-012 WL 528253 (E.D. Ark. Feb. 17, 2012); Berish v.

Southwestern Energy Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010); Banks v. Ashland Oil Co.,127 F.Supp.2d 679, 680-681 (E.D.Pa. 2001).  However, "since the determination of whether or not an activity is abnormally dangerous is fact-intensive, courts often wait until discovery is complete before making this determination. See Norma J. Fiorentino, et al. v. Cabot Oil & Gas Corp., No. 09–CV–2284, 750 F.Supp.2d 506, 2010 WL 4595524 (M.D.Pa. Nov. 15, 2010)." Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702, 705 (M.D.Pa. 2011).

These guiding principles, which have been applied to the precise issue before this Court–the question of whether natural gas extraction through "fracking" is abnormally dangerous– dictate the course we should follow.  While this determination must be made as a matter of law, in accordance with the high and exacting standards prescribed by the Restatement of Torts as construed by the Pennsylvania courts, it may not be made on the pleadings.  Rather, it must await the close of discovery when an adequate factual record has been developed to permit informed judicial decision-making.  Therefore, consistent with settled caselaw, as to this claim it is recommended that the Court deny the motion to dismiss, without prejudice to further consideration of this issue through a dispositive summary judgment motion at the close of discovery. Tucker v. Southwestern Energy, Co., No. 11-44, 2-012 WL 528253 (E.D. Ark. Feb.

17, 2012); <u>Berish v. Southwestern Energy Production Co.</u>, 763 F.Supp.2d 702 (M.D.

Pa. 2011); <u>Fiorentino v. Cabot Oil & Gas Corp.</u>, 750 F.Supp.2d 506 (M.D.Pa. 2010).

### 3.      Private Nuisance

In Count 8 of his complaint, Kamuck alleges that the drilling and natural gas

extraction activities of the Defendants constitute a private nuisance.  Pennsylvania

recognizes the "private nuisance" doctrine and "defines a 'private nuisance' as 'a

nontrespassory invasion of another's interest in the private use and enjoyment of

land.'" <u>Philadelphia Elec. Co. v. Hercules, Inc.</u>, 762 F.2d 303, 313 (3d Cir. 1985).  In

terms of defining what conditions constitute a private nuisance:

> [T]he Pennsylvania Supreme Court adopted section 822 of the
> Restatement (Second) of Torts  as the test to determine the existence of
> a private nuisance.  That section provides as follows:
>
> **§ 822. General Rule**
>
> One is subject to liability for a private nuisance if, but only if, his
> conduct is a legal cause of an invasion of another's interest in the private
> use and enjoyment of land, and the invasion is either (a) intentional and
> unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling
> liability for negligent or reckless conduct, or for abnormally dangerous
> conditions or activities.
>
> The Restatement defines the extent of the invasion necessary to incur
> liability as follows:
>
> **§ 821F. Significant Harm**
>
> There is liability for a nuisance only to those to whom it causes
> significant harm, of a kind that would be suffered by a normal person in

the community or by property in normal condition and used for a normal purpose.

**Kembel v. Schlegel**,  478 A.2d 11, 14-15 (Pa. Super. Ct. 1984).

By describing a private nuisance in terms of conditions or activities which cause "significant harm," Pennsylvania case law limits this doctrine to "harm of importance, involving more than slight inconvenience or petty annoyance.  The law does not concern itself with trifles, and, therefore, there must be a real and appreciable invasion of the Plaintiff's interests before he can have an action for either a public or a private nuisance .... [I]n the case of a private nuisance, there must be a real and appreciable interference with the plaintiff's use or enjoyment of his land before he can have a cause of action."  Id.  Pennsylvania courts also recognize that "it is sometimes difficult to determine whether the invasion is significant.  The standard for the determination of significant character is the standard of normal persons or property in the particular locality.  If normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant."  Id.

These legal benchmarks, which call upon the courts to assess whether a condition is a "slight inconvenience or petty annoyance," or constitutes something that is "definitely offensive, seriously annoying or intolerable," necessarily entails an assessment that goes beyond the pleadings and involves a factual evaluation of the

impact of a defendant's actions on others nearby.  Thus, while Pennsylvania courts have found that mere roadside noise and dust, which are some of the matters about which Kamuck complains, do not constitute a private nuisance, they have only made these findings based upon a fully developed factual record.  See Karpiak v. Russo, 450 Pa. Super. 471, 676 A.2d 270 (1996)(granting non-suit at trial on private nuisance based upon dust and road noise claims).

These legal tenets guide our resolution of the motion to dismiss this claim. While Pennsylvania case law suggests that a private nuisance claim may fail if the evidence shows that it is simply based upon roadside traffic noise and dust, Karpiak v. Russo, supra, fairly construed Kamuck's complaint alleges more than mere noise and dust.  It also asserts that potentially toxic fracking fluids has been sprayed, drained, and released on or near his property in ways which have tainted the ground water and streams on his land.  These claims, if proven, could support a private nuisance claim.  See Tucker v. Southwestern Energy, Co., No. 11-44, 2-012 WL 528253 (E.D. Ark. Feb. 17, 2012)(passage of noxious by-products from fracking onto plaintiff's land, water and air may support trespass and nuisance claims).  At a minimum, these allegations present disputed issues of fact regarding whether the degree of harm experienced by Kamuck from these activities are a "slight inconvenience or petty annoyance," or constitute "something that is  definitely offensive, seriously annoying or intolerable." Kembel v. Schlegel, 478 A.2d 11, 14-

15 (Pa. Super. Ct. 1984).  These  disputes must await full development of the facts, and cannot be determined on a motion to dismiss.  Therefore, the Defendants' motion to dismiss Count 10 should also be denied, without prejudice to further consideration of this issue through a dispositive summary judgment motion at the close of discovery.

### E.     Shell Energy Holding LP, LLC Should Be Dismissed from This Action

Finally, in their motion to dismiss, the Defendants also seek dismissal of two corporate entities from this action:  Shell Energy Holding LP, LLC and Shell Energy Holding GP, LLC.  With respect to these two named corporate Defendants, the grounds for dismissal cited by the Defendants differ.  As to Shell Energy Holding LP, LLC the Defendants simply assert, without contradiction by the Plaintiff, that no such legal entity exists.  As to Shell Energy Holding GP, LLC., the Defendants argue that the Plaintiff's complaint does not allege sufficient involvement by this corporate entity in the Tioga county drilling activities described in the complaint to hold Shell Energy Holding GP, LLC liable.

Kamuck has responded to this aspect of the Defendants' motion to dismiss in a twofold fashion.  First, Kamuck alleges that Shell Energy Holding GP, LLC is a general partner of Defendant SWEPI, LP, the Defendant directly involved in these drilling operations.  (Doc. 1, ¶¶2-4)  As the partner of SWEPI, the Plaintiffs contend that the ultimate issue of the potential liability of Shell Energy Holding GP, LLC will

turn on factual considerations and should be addressed on summary judgment, but not

thorough a motion to dismiss.  See Zaloga v. Provident Life & Accident Ins. Co. of

Am., 671 F. Supp. 2d 623, 635 (M.D. Pa. 2009).

As to these issues and named Defendants, in the absence of some allegation to

the contrary, we agree that Shell Energy Holding LP, LLC, which the Defendants

assert, without contradiction by the Plaintiff, does not exist should be dismissed from

this action.   However, with respect to Shell Energy Holding GP, LLC, which is

identified in the complaint as a general partner of Defendant SWEPI, LP, (Doc. 1, ¶¶2-

4), we believe that the question of whether this corporate entity has sufficient direct

involvement in the acts recited by Kamuck in his complaint presents a mixed question

of law and fact, which is more appropriately addressed through a motion for summary

judgment rather than on a motion to dismiss.   Therefore, we recommend that this

aspect of the Defendants' motion be denied.

## F.    __The Defendants' Motion to Strike Should Be Granted, in Part, and Denied, in Part__

The Defendants have also filed a motion to strike which seeks three forms of

relief:   First, the motion seeks to strike punitive damage claims from Kamuck's

complaint, and specifically argues that punitive damage claims arising out of the

counts of the Plaintiff's complaint that allege breach of contract should be stricken

since such punitive damages are not available under the law in breach of contract

claims.  Second, the Defendants urge us to strike all claims for attorney's fees and costs, arguing that fees and costs may not be recovered in this action.  Finally, the Defendants insist that Kamuck's averments regarding the emotional distress he has experienced should be stricken from the complaint since as a matter of law a Plaintiff may not maintain an action for emotional distress under Pennsylvania law in the absence of an accompanying physical injury.

In considering this motion to strike, we recognize rulings on motions to strike rest in the sound discretion of the Court.  Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987).  That discretion, however,  is guided and informed by certain basic principles.  Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored."  Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982).  As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result, . . . '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil § 1380 at 783 (1969)).  See also, Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D.Mo.1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000)." Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).  In practice, courts should exercise this discretion and strike pleadings only when those

pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001).

Applying these benchmarks we note at the outset that, to the extent that the Defendants seek to strike any punitive damage claims relating to Kamuck's breach of contract action, we have recommended that the breach of contract action be dismissed entirely. In light of this recommendation, it follows that the Plaintiff would not be able to assert an entitlement to any punitive damages based upon these legally infirm claims, and the motion to strike should be granted as to punitive damage allegations pertaining to the Plaintiff's breach of contract claims.

As to the remaining punitive damage allegations, which sound in tort, while we acknowledge that "in Pennsylvania, '[p]unitive damages may [only] be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' Restatement (Second) of Torts § 908(2)." Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 515 (M.D.Pa. 2010), determination of the outrageousness or recklessness of a defendants' actions typically entails a factual assessment of what may be proven, something that falls beyond the scope of a motion to strike. Recognizing that we should strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party, Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th

Cir. 2001), the averments in the Plaintiff's complaint which "allege that Defendants were grossly negligent in the operation and drilling thus subjecting Plaintiff[] to many harms," Fiorentino v. Cabot Oil & Gas Corp.,750 F.Supp.2d 506, 515 (M.D.Pa. 2010), are not subject to a motion to strike. Id. Instead, the question of whether the Plaintiff can prove what he alleges must await another day.

Similarly, with respect to the Defendants' motion to strike the Plaintiff's request for attorney's fees,"[w]hile it is 'well-settled under Pennsylvania law that 'a plaintiff generally may not recover attorneys' fees in a tort action[ ]'; at such an early stage in the proceedings it is impossible to determine that there are no [conceivable] circumstances where an award of fees or litigation costs would be appropriate. We, therefore, will not strike such allegations from the . . . Complaint." Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 515 (M.D.Pa. 2010). In sum, while the Plaintiff's possibility of success on this claim may be remote, that fact, standing alone, does not at this stage of the litigation transform this averment into an allegation which is both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001). Therefore, we should decline to strike this allegation.

Finally, as to the Plaintiff's claims for damages relating to emotional injuries, we agree that: "Under Pennsylvania law, claims for emotional distress require that the plaintiff suffer an attendant physical injury. Houston v. Texaco, Inc., 371 Pa.Super.

399, 538 A.2d 502, 505 (Pa.Super.Ct.1988)." <u>Berish v. Southwestern Energy</u>

<u>Production Co</u>,. 763 F.Supp.2d 702, 706 (M.D.Pa.2011).  Therefore, Kamuck plainly

will not be permitted to advance damage claims based solely upon his emotional

distress in this lawsuit.  However, as we read Kamuck's complaint, he alleges both

emotional distress and some measure of accompanying physical injury, allegations

which are sufficient under Pennsylvania law to state a claim.  Whether Kamuck can

sustain such a claim as a matter of fact will determine the ultimate success of these

claims, but does not at this stage compel us to strike these averments.

### III.   <u>Recommendations</u>

For the foregoing reasons IT IS RECOMMENDED as follows:

First, with respect to the Defendants' Motion to Dismiss (Doc.  11). IT IS

RECOMMENDED that the motion be GRANTED with respect to:

1.   Plaintiff's breach of contract claim (Count 1);

2.   Plaintiff's breach of duty of fair dealing claim (Count 2);

3.   Plaintiff's declaratory judgment claims, which the court construes
as being premised upon issues of contract interpretation (Counts
3, 4 and 5);

4.   Plaintiff's anticipatory trespass claim (Count 6); and

5.   Plaintiff's negligence *per se* and gross negligence claims. (Count
9.)

6.      The Defendants' motion to dismiss Shell Energy Holding LP, LLC

should be GRANTED, and the Defendant' motion to dismiss Shell

Energy Holding GP, LLC should be DENIED.

As to the remaining tort claims advanced by the Plaintiff in counts 8, 9 and 10 of the Plaintiff's complaint., it is recommended that the motion to dismiss be DENIED.

It is further recommended that the Defendants' motion to strike (Doc. 13), be GRANTED as to the Plaintiff's breach of contract punitive damages claim, but DENIED in all other respects.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of March 2012.

<u>**S/Martin C. Carlson**</u>
Martin C. Carlson
United States Magistrate Judge