## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD E. KAMUCK,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **Civil No. 4:11-CV-1425** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SHELL ENERGY HOLDINGS GP, LLC,:** | | |
| **SHELL ENERGY HOLDINGS LP, LLC,:** | | |
| **and SWEPI, LP (d/b/a SHELL** | : | |
| **WESTERN EXPLORATION** | : | |
| **AND PRODUCTION, LP),** | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM OPINION AND ORDER

Contending that Plaintiff's remaining claims in this action or overly general

and lack evidentiary support, and claiming to have significant doubts about Plaintiff's

ability to make out a *prima facie* case in support of his remaining claims based on the

discovery exchanged to date, Defendants have moved the Court to modify the

existing case management order by entering a so-called "Lone Pine" order, which

would require Plaintiff to identify the evidence he has that is required to establish his

claims before any further discovery is permitted.[1]   Through this motion, Defendants

---

[1] See Lore v. Lone Pine Corp., 1986 WL 637507 (N.J. Superior Law Div. Nov. 18, 1986).  As discussed below, where found to be appropriate, a "Lone Pine" case management order essentially obligates plaintiffs to provide facts and otherwise substantiate their causes of action through expert reports prior to engaging in a complex civil action and traditional discovery.  These orders are

suggest that they are not seeking the premature adjudication of Plaintiff's remaining claims, but are instead attempting only to discover the evidence that Plaintiff has at this time to support his remaining claims, and to be provided with information regarding the factual, scientific, and medical evidence that Plaintiff claims to have in support of his contentions in this litigation.  As such, Defendants request the entry of a modified case management order that would require Plaintiff to provide – before the continuation of any further discovery and motions practice – admissible factual evidence to substantiate the allegations and elements of Plaintiff's remaining claims of nuisance, negligence, and strict liability as a result of Defendants' natural gas exploration and drilling activities.

Plaintiff opposes Defendants' motion, asserting that <u>Lone Pine</u> orders are

---

"pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim." <u>Steering Committee v. Exxon Mobil Corp.</u>, 461 F.3d 598, 604 n.2 (5th Cir. 2006); <u>see also</u> <u>Baker v. Chevron USA, Inc.</u>, No. 1:05-CV-227, 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007) ("The basic purpose of a Lone Pine order is to identify and cull potentially meritless claims and streamline litigation in complex cases.").  Such orders appear to be most commonly utilized in complex toxic tort actions involving multiple parties, where the costs of discovery threaten to be extraordinary and unnecessary, particularly when considered in the context of often very general allegations of injuries suffered by a significant number of plaintiffs.  Such orders are intended to avoid the potential for engaging in expensive, time consuming, and needless discovery practice in complex tort cases where plaintiffs lack a sufficient evidentiary basis to support their claims.

typically entered only in mass tort litigation, and toxic-tort actions involving complex issues and potential burdens that would otherwise be imposed upon the parties in these particular types of litigation – factors Plaintiff argues are not present in this case.  Plaintiff avers that the parties were engaging in ongoing discovery prior to the entry of the Court's order staying case management deadlines pending disposition of Defendants' Lone Pine motion, and maintains that such discovery should be permitted to proceed in the traditional course of federal civil practice.

In their reply, Defendants argue that Plaintiff improperly and inaccurately relies exclusively on procedural arguments in contesting the motion, and contend that their substantive arguments made in support of a Lone Pine case management order remain effectively unchallenged.

Upon consideration, although we find that we have the authority to enter a Lone Pine order in the exercise of our broad discretion to manage this civil action, we are not persuaded that such an order is warranted at this time.  Accordingly, we will deny Defendants' motion, but do so without prejudice to Defendants seeking to return to the Court if they believe in good faith that Plaintiff's discovery requests are unreasonably burdensome in light of the relative generality of Plaintiff's allegations regarding his injuries and Defendants' allegedly tortious conduct.  Furthermore, we will schedule a telephone conference with the parties to discuss the proper course for

staging discovery going forward, particularly in light of Defendants' arguments regarding Plaintiff's claims and their evidentiary basis, in an effort to help streamline the discovery process in manner that is fair to all parties and that minimizes unnecessary expense.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Edward Kamuck is a disabled Vietnam veteran who maintains a home on approximately 93 acres of land in Mansfield, Pennsylvania.  Defendants are business entities involved in oil and gas exploration and drilling activities on properties located near Kamuck's home, and who utilize the area roads as part of their oil and gas business.  Plaintiff claims that Defendants' business activities have caused him physical injury and have damaged his property.

Plaintiff brought this action against Defendants on August 3, 2011.  (Doc. 1.) In the complaint, Kamuck initially brought 10 causes of action against Defendants, including breach of contract, declaratory judgment, and a number of tort-based claims, all relating to Defendants oil and gas exploration and drilling activities.  (Id.)

Upon consideration of Defendants' motion to dismiss the complaint (Doc. 11.), and following this Court's report and recommendation (Doc. 33.), the district court entered an order dismissing all of Plaintiff's claims except for three tort claims set forth in Counts 8, 9, and 10 of the complaint alleging (1) nuisance, (2) negligence,

and (3) strict liability, premised on allegations that Defendants' oil and gas activities have contaminated Plaintiff's property and water, resulted in health injuries to Plaintiff, diminished Plaintiff's property value, and caused Plaintiff to suffer loss of enjoyment of his property. (Doc. 39.)

On April 26, 2012, the parties consented to proceed before the undersigned (Doc. 38.), and the district court referred the case to this Court on April 27, 2012. (Doc. 40.)  Defendants answered the complaint on May 10, 2012 (Doc. 42.), and the Court entered a standard case management order on May 11, 2012, setting forth a number of pre-trial, discovery, and trial dates that would govern this action. (Doc. 43.)

The following month, Defendants filed the motion now pending before the Court, seeking entry of a modified case management order along the lines of that issued in Lore v. Lone Pine, 1986 WL 637507 (N.J. Superior Ct. Nov. 18, 1986), which would require Plaintiff to make a prima facie showing in support of his remaining claims within 120 days, and before any additional discovery or litigation would be allowed. (Doc. 44.)  Specifically, in their proposed order, Defendants would have the Court compel Plaintiff to provide:

> (1) expert opinions, which would include supporting data and facts, in order to establish (a) the identity of each hazardous substance from Defendants' activities to which

5

Plaintiff or his property were exposed, and which Plaintiff claims caused him or his property injury; (b) whether any and each of these substances can cause the types of disease, illness, or contamination that Plaintiff claims; (c) the dose or other quantitative measurement of the concentration, timing, and duration of the exposure to each substance; (d) if other than the Plaintiff's residence, the precise location of any exposure; (e) an identification , by way of reference to a medically recognized diagnosis, of the specific disease or illness from which Plaintiff allegedly suffers; and (f) a conclusion that the illness or property contamination was in fact caused or exacerbated by such exposure;

(2) each and every study and report of analysis that contains any finding of contamination on Plaintiff's property or at the point of each alleged exposure;

(3) a list of the name and last known address and phone number of each of Plaintiff's health care providers who have provided Plaintiff with health care services, together with a release authorizing the health care providers to provide Plaintiff's and Defendants' counsel with Plaintiff's health records; and

(4) identification and quantification of contamination of Plaintiff's property attributable to Defendants' oil and gas activities, and any resulting damages attributed to such activities.

(Doc. 44, Ex. 2, Proposed Order.)

In addition, Defendants seek to have the Court suspend any further discovery or other litigation deadlines pending further order of the Court, and following review of Plaintiff's *prima facie* showing in support of his claims.  (Id.)  Defendants' motion

6

is fully briefed and ripe for disposition.  (Docs. 45, 47, 49.)

## III.   DISCUSSION

Lone Pine case management orders derive from a 1986 decision of the New Jersey Superior Court in Lore v. Lone Pine Corp., 1986 WL 637507 (N.J. Superior Ct. Nov. 18, 1986).  In Lone Pine, the New Jersey court entered a pretrial order that required the plaintiffs to provide facts in support of their claims through expert reports, or risk having their case dismissed.  Id., 1986 WL 637507, at *1-*3.  As one federal court of appeals has noted, "Lone Pine orders are designed to handle the complex issues and potential burdens of defendants and the court in mass tort litigation."  Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000).

Review of relevant case law thus indicates that Lone Pine orders appear to be utilized most often in cases involving complicated legal and factual issues in complex mass tort and toxic-tort litigation involving multiple parties, where the discovery process would be particularly burdensome, and where the plaintiff's ability to sustain their burden of proof was found to be questionable.  See, e.g., Avila v. Willits Environmental Remediation Trust, 633 F.3d 828 (9th Cir. 2011) (affirming dismissal of plaintiffs' claims in complex environmental litigation where, five years after the litigation commenced, the plaintiffs failed to comply with the district court's order to make a *prima facie* showing of exposure and causation); Acuna, 200 F.3d at 340

(action involved approximately 1,600 plaintiffs suing over 100 defendants for injuries alleged to have occurred over four decades); In re Avandia Marketing, Sales Practices and Prods. Liability Litig., 2010 WL 4720335, *1 n.1 (E.D. Pa. Nov. 15, 2010) (citations omitted); Abbatiello v. Monsanto Co., 569 F. Supp. 2d 351, 353 n. 3 (S.D.N.Y.2008) (toxic tort action involving multiple parties); In re Vioxx Prod. Liab. Litig., 557 F. Supp. 2d 741, 743 (E.D. La.2008); Burns v. Universal Crop Protection Alliance, 2007 WL 2811533 (E.D. Ark. Sept. 25, 2007) (action brought by 82 cotton farmers against five herbicide manufacturers under theories of strict liability, negligence, breach of warranty, and violation of state law, alleging that defendants' products damaged plaintiffs' cotton crops); Morgan v. Ford Motor Co., 2007 WL 1456154, at *1, *7 (D.N.J. May 17, 2007) (toxic tort action involving more than 700 plaintiffs and multiple defendants); Baker v. Chevron USA, Inc., 2007 WL 315346, *1 (S.D. Ohio Jan. 30, 2007) (360 plaintiffs alleging injury from defendant's operation of a gasoline refinery); In re Rezulin Prods. Liability Litig., 441 F. Supp. 2d 567 (S.D.N.Y. 2006) (28 plaintiffs suing manufacturer of prescription diabetes medication, in an action related to thousands of lawsuits for alleged liver damage allegedly caused by the medication); In re Silica Prods. Liability Litig., 398 F. Supp. 2d 563 (S.D. Tex. 2005) (multi-district litigation involving approximately 10,000 plaintiffs alleging injury from silica exposure caused by more than 250 defendants);

<u>In re 1994 Exxon Chemical Plant Fire</u>, 2005 WL 6252312 (M.D. La. Apr. 7, 2005)

(consolidated multi-state toxic tort suits);  <u>Renaud v. Martin Marietta Corp.</u>, 749 F.

Supp. 1545 (action involving over 30 plaintiffs suing a missile manufacturer for water

pollution).[2]

Although no federal rule expressly authorizes the use of <u>Lone Pine</u> orders,

federal courts have interpreted Rule 16 of the Federal Rules of Civil Procedure as

supplying the authority to enter <u>Lone Pine</u> orders in complex litigation, pursuant to

district courts' broad discretion to administer the civil actions over which they

preside.  <u>See</u> <u>McManaway v. KBR, Inc.</u>, 265 F.R.D. 384, 385 (S.D. Ind. 2009) ("<u>Lone</u>

<u>Pine</u> orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure

---

[2] Although <u>Lone Pine</u> orders are most typically entered in large, complex toxic tort actions, we recognize that courts have, where appropriate, also entered them in more discrete cases involving fewer parties.  <u>See, e.g.</u>, <u>Strudley v. Antero Res. Corp.</u>, No. 2011-cv-2218 (Col. Dist. Ct. Denver Cty. May 9, 2012) (<u>Lone Pine</u> order issued where plaintiff family alleged health injuries from exposure to natural gas operations); <u>Pinares v. United Techs. Corp.</u>, No. 10-80883, 2011 WL 240512, at *1-2 (S.D. Fla. Jan. 19, 2011) (<u>Lone Pine</u> order entered in case brought by two plaintiffs alleging health injuries from toxic wastes allegedly from the defendant's manufacturing process; case was related to a companion putatitve class action involving the same counsel); <u>Schelske v. Creative Nail Design, Inc.</u>, 933 P.2d 799, 803 (Mont. 1997) (order issued in case brought by two plaintiffs alleging health injuries from toxic substances allegedly from cosmetic manufacturing).  Notwithstanding these examples, it appears that <u>Lone Pine</u> orders are most typically entered in civil actions involving multiple parties, and often involving complex toxic tort allegations, where discovery would likely be particularly challenging, protracted, and expensive.

which provides that a court may take several actions during a pretrial conference, including 'adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems . . . .' Fed. R. Civ. P. 16(c)(2)(L)."); see also Ramos v. Playtex Prod., Inc., 2008 WL 4066250, at *5 (N.D.Ill. Aug. 27, 2008) (same, denying motion for Lone Pine order); Morgan, 2007 WL 1456154, at *5-6 (D.N.J. May 17, 2007) (noting, among other provisions, several potentially applicable provisions of Rule 16); 35B C.J.S. Federal Civil Procedure § 911 (2009) ("So-called 'Lone Pine orders' are ... issued under the wide discretion afforded district judges over the management of discovery."); 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1525 (2d ed.1990).

In evaluating requests for Lone Pine or modified case management orders, courts have found that a number of factors may be relevant, including (1) the posture of the litigation; (2) the case management needs presented; (3) external agency decisions that may bear on the case; (4) the availability of other procedures that have been specifically provided for by rule or statute; and (5) the type of injury alleged and its cause. See In re Digitek Prod. Liability Litig., 264 F.R.D. 249, 256 (S.D. W. Va. 2010) (considering these factors, and denying motion for Lone Pine order in multi-district litigation brought by thousands of plaintiffs across the United States against

defendants who were involved in the manufacture and distribution of heart medication). In addition, "case complexity and pleading defects are additional factors worth considering in advance of entering a <u>Lone Pine</u> order. <u>Id.</u> One court has suggested that <u>Lone Pine</u> orders are used "routinely" in mass tort cases, <u>In re Vioxx</u>, 557 F. Supp. 2d at 743, but whether or not this is true, the same court observed that where a court finds a <u>Lone Pine</u> order warranted, the "court should strive to strike a balance between efficiency and equity." <u>Id.</u>

The court in <u>Digitek</u> also observed that courts have begun expressing concern about "the untethered use of the <u>Lone Pine</u> process." <u>Id.</u> In this regard,

> A significant criticism of the <u>Lone Pine</u> order is that "it gives courts the means to ignore existing procedural rules and safeguards." <u>Simeone v. Girard City Bd. of Educ.</u>, 171 Ohio App.3d 633, 872 N.E.2d 344, 350 (Ohio Ct. App.2007). The Court of Appeals of Ohio went on to warn that "[w]hen the <u>Lone Pine</u> order cuts off or severely limits the litigant's right to discovery, the order closely resembles summary judgment, albeit without the safeguards that the Civil Rules of Procedure supply. Furthermore, many *Lone Pine* orders are inconsistently applied, which further confuses their purpose."

<u>McManaway</u>, 265 F.R.D. at 386, 2009 WL 4061581, at *2 (observing that <u>Lone Pine</u> orders can be useful devices but cautioning that they are not a "substitute for ... a motion for summary judgment."); <u>Simeone,</u> 171 Ohio App.3d at 643, 872 N.E.2d at 352 ("The timeline of this case is of concern because it is apparent that appellants

were not given the full range and benefit of discovery before the <u>Lone Pine</u> order was issued. In most of the <u>Lone Pine</u> cases we have reviewed in coming to this conclusion, the <u>Lone Pine</u> order was issued only after one party was refusing to comply with discovery requests or when the plaintiffs failed to set forth a prima facie claim. These circumstances are not present in this case.").

In considering the foregoing factors and concerns, one district court presiding over complex products liability litigation involving a nationwide group of plaintiffs and multiple defendants denied a motion for a <u>Lone Pine</u> order.  <u>In re Digitek Product Liability Litig.</u>, 264 F.R.D. 249 (S.D. W.Va. 2010).  In so doing, the court elected to rely upon the procedural tools expressly provided for under the Federal Rules of Civil Procedure rather than to rely upon the court's own inherent case management authority to fashion a case management order that required the plaintiffs to produce evidence and expert reports in support of their claims as a precondition to taking discovery.  <u>Id.</u> at 259 ("I believe it more prudent to yield to the consistency and safeguards of the mandated rules [providing for dispositive motions and sanctions] especially at this stage of this litigation.  Claims of efficiency, elimination of frivolous claims and fairness are effectively being addressed using the existing and standard means.").

Although the action pending before the Court is between a single plaintiff and three related entities involving what appear to be three relatively straightforward tort claims, Defendants argue that a Lone Pine order is appropriate and warranted, largely due to what Defendants argue is a failure on the Plaintiff's part to produce any evidence that would be sufficient to substantiate his claims, and because Plaintiff's allegations regarding his alleged exposure, injury, and causation are so scant.  In this regard, Defendants contend that Plaintiff has produced only one document that discusses soil sampling at or near Kamuck's property, and only one set of documents addresses water test results – neither of which show impact to the soil or water traceable to oil and gas development.

Defendants also observe that Plaintiff has yet to produce discovery regarding alleged air pollution or noise levels, and has produced minimal medical evidence, much of which is irrelevant to the allegations in this case.  On the basis of Plaintiff's limited discovery responses to date, Defendants harbor doubts about Plaintiff's ability to make a *prima facie* evidentiary showing of exposure, injury, and causation based on factual, scientific, and medical evidence that will be necessary in this case. Defendants also assert, generally, that "the need for experts, discovery, time, Court resources, and costs is extensive." (Doc. 49, at 5.)  Accordingly, Defendants urge the Court to find that these circumstances justify entry of a Lone Pine order to require

13

Plaintiff to produce certain evidence within 120 days in support of his claims or, presumably, face summary disposition of his claims.[3]  Defendants observe that at the time they filed their motion for a <u>Lone Pine</u> order, discovery had been proceeding for months, and that during that time Plaintiff had failed to produce any evidence related to his alleged exposure to harmful chemicals, what those chemicals may have been, any injury potentially related to the alleged exposure, or any causal connection between Defendants' natural gas operations and Plaintiff's generally alleged health issues and property damage.  Given the passage of time, and the asserted deficiencies in Plaintiff's allegations and discovery production, Defendants represent that they question whether Plaintiff will be able to produce any evidence to support his vague claims.

Furthermore, Defendants point to evidence that they have produced to show

---

[3]  Defendants insist that they "do not seek premature adjudication of the remaining claims at this time; nor do Defendants seek to place an additional burden or prejudice on Plaintiff."  (Doc. 45, at 3.)  But it is clear that Defendants are seeking to have the Court enter an order that would substantially modify the traditional case management order that has been in place in this case, and impose upon Plaintiff a one-sided burden to produce evidence Defendants believe to be sufficient to establish a *prima facie* case before Defendants would be required to produce any additional information in response to Plaintiff's discovery requests. Furthermore, although Defendants suggest that they are not seeking the premature adjudication of Plaintiff's remaining claims, it appears Defendants would seek such a result if Plaintiff were not to comply with the <u>Lone Pine</u> order that Defendants would have the Court enter.

14

that there has been only one violation issued by the Pennsylvania Department of Environmental Protection relating to drilling and fracturing at the Fish and Knowlton Wells, which are the wells at issue in this case, and that this violation was not for health and safety, but was rather only for a signage violation. (Doc. 49, Ex. 2, Affidavit of H. James Sewell, ¶ 6.) Other than this violation, the Fish and Knowlton Wells have been found to be in compliance with all applicable laws, rules, and regulations. (Id., ¶ 7.) Defendants also offer evidence that they contend undermines Plaintiff's water and soil test results, and which Defendants argue shows that there has been no contamination of Plaintiff's property. (Doc. 49, Ex. 3, Affidavit of Tim Franceschini.) Thus, Defendants argue that not only has Plaintiff failed to support his claims with evidence over nearly a year of discovery, but Defendants own discovery production thoroughly undercuts Plaintiff's general claims of injury.

Upon careful consideration of this issue, and mindful of Defendants' substantial arguments regarding the quality of Plaintiff's discovery production to date, we will nevertheless deny Defendants' motion at this time insofar as it seeks entry of an order that places an exclusive burden on Plaintiff to comply with a set of discovery benchmarks within 120 days, in accordance with the detailed requirements set forth in Defendants' exacting proposed order. (Doc. 44, Ex. 2, Proposed Order.) However, in denying the motion, we nevertheless do find that the Court may now be

called upon to exercise more oversight of the discovery process in this case, in order to ensure that Defendants are not put in a position of expending considerable additional resources if Plaintiff is unable to clarify his remaining claims and produce relevant evidence to support them.[4]   For this reason, the Court will schedule a telephone conference with the parties to discuss the discovery process in this case, and will solicit from the parties their views on the proper method of staging and limiting discovery in response to Defendants' representations – which Plaintiff has essentially failed to rebut in any substantial way.

At this time, like the court in <u>Digitek</u> we find it preferable "to yield to the consistency and safeguards of the mandate rules [of civil procedure]," 264 F.R.D. at 259, as well as the court's own flexibility and discretion to address discovery disputes as they arise, as opposed to entering a rigid <u>Lone Pine</u> order that Defendants have proposed.  In this regard, the Court is prepared to address discovery disputes as they arise in accordance with the Federal Rules of Civil Procedure, and also anticipates that further dispositive motions may be warranted in the event Plaintiff fails to

---

[4]  Notably, Defendants have merely asserted that allowing this matter to proceed in accordance with the existing case management order will require extensive court time, resources from the parties, and the retention of numerous experts, Defendants have not offered any specific description of what these burdens are expected to entail, what resources have been expended to date, or what resources will be required going forward.

develop evidence to support his claims.  However, despite what appear to be arguable

shortcomings on the part of Plaintiff's allegations and evidentiary production to date,

we find ourselves in agreement with the <u>Digitek</u> court, which observed that:

> Resorting to and crafting a <u>Lone Pine</u> order should only
> occur where existing procedural devices explicitly at the
> disposal of the parties by statute and federal rule have been
> exhausted or where they cannot accommodate the unique
> issues of this litigation.  We have not reached that point.

264 F.R.D. at 259.

## IV.  <u>ORDER</u>

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED

THAT Defendant's motion for entry of a <u>Lone Pine</u> order (Doc. 44.) is DENIED.

IT IS FURTHER ORDERED THAT the Court will convene a telephone

conference with the parties on **September 20, 2012, at 10:00 a.m.** to address the

discovery process in this case, and the staging of any additional discovery going

forward, mindful of Defendants' contentions regarding the generality of Plaintiff's

remaining claims and the apparent lack of evidence that has been produced to date in

support of them.  Defendants' counsel shall be responsible for contacting the Court

at (717) 614-4120 once all parties are on the line.

So ordered this 5th day of September 2012.

         */s/ Martin C. Carlson*         
            Martin C. Carlson
            United States Magistrate Judge