## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD KAMUCK,** | : | **Civil No. 4:11-CV-1425** |
| | : | |
| **Plaintiff,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **SHELL ENERGY HOLDINGS GP,** | : | |
| **LLC., SHELL ENERGY HOLDINGS** | : | |
| **LP, LLC, and SWEPI, LP (d/b/a SHELL** | : | |
| **WESTERN EXPLORATION AND** | : | |
| **PRODUCTION, LP)** | : | |
| | : | |
| **Defendants.** | : | |

## OPINION

### I.    Introduction

In its current posture this case presents an unusual circumstance.  The plaintiff who has brought this action, Edward Kamuck, has becomes estranged from his counsel, who has withdrawn from the case.  Kamuck, who has for the past two years been proceeding *pro se* has also essentially boycotted his own litigation, failing to comply with discovery demands, discounting court orders, declining to litigate the claims which he has brought and generally "playing possum" when litigation demands are thrust upon him.  Fattah v. Beard, 214 F. App'x 230, 233 (3d Cir. 2007).  Instead

of fulfilling his responsibilities as a litigant Kamuck has, sadly, simply insisted that the defendants should settle this case on terms that he deems favorable.

This dilatory behavior has now persisted for two years despite repeated and explicit warnings from this Court that the failure to actively, and properly, litigate this matter may result in the dismissal of this case. Moreover, the dispositive summary judgment motion filed by the defendants, which has never been fully and adequately addressed by Kamuck, exposes the legal and factual bankruptcy of Kamuck's claims. In this setting where the plaintiff has, in effect, abandoned his own litigation by failing over the past two years to abide by court orders, comply with discovery, and adequately respond to dispositive motions, and the plaintiff's claims now fail on their merits, we are now compelled to conclude that dismissal of this matter is warranted.

## II.    Statement of Facts and of the Case

On August 3, 2011, the plaintiff, Edward Kamuck, acting through counsel filed this civil complaint. (Doc. 1.) The well-pleaded facts set forth in the plaintiff's initial counseled complaint recited that Kamuck was a totally disabled Vietnam War veteran. (Doc. 1, ¶1.) In December of 2009, Kamuck purchased a 93 acre tract of land in rural Tioga County. (Id., ¶17.) This tract of land was part of a larger property formerly known as the Copp property. (Id., ¶8.) The Copp Property was a 323 acre property in Tioga County, which was subject to the Copp Lease, an Oil and Gas Lease, a lease

which permitted removal of mineral resources, contained a ten-year primary term and, if certain mineral extraction activities were initiated during that primary term, provided the Lessee with a fee simple determinable. (Id. at ¶¶ 8-10.) The Copp Lease also provided the Lessee with a right to unitize the Copp Lease with other leases for production from the Onondaga, Oriskany, or deeper formations. (Id. at ¶ 13.) The rights conferred by the original Copp Lease, however, did not reach, or speak to, extraction of natural gas from Marcellus Shale formations. When the Copp Property was later subdivided into 5 properties, including the land purchased by the plaintiff, each property owner took the property subject to mineral rights conferred by the Copp Lease. ( Id. at ¶¶ 17, 18.)

By 2010, the defendants were lessees under the Copp Lease, and sought to expand their mineral rights to include extraction of natural gas from Marcellus Shale formations. Towards that goal, the defendants approached each of the owners of a property subdivided from the original Copp Property and asked these property owners to execute an Amendment and Ratification ("Amendment") to the Copp Lease, authorizing the extraction of these Marcellus Shale resources on the property owner's land, subject to a unitizing agreement. (Id., Exhibit 8.) All of the property owners who held lands formerly encompassed by the Copp Lease signed the Amendment to the Copp Lease with one exception–the plaintiff, Edward Kamuck. Accordingly, those adjoining properties are subject to the Copp Lease, as amended, and the

defendants have commenced drilling and extraction of natural gas from these properties under the terms of the amended Copp Lease.  Because Kamuck refused to enter into the Amended Copp Lease, the original 10-year lease on his property expired by its own terms on June 12, 2011.

The defendants then began natural gas extraction from the Marcellus Shale deposits found beneath the properties of adjoining land owners who had signed the Copp Lease addendums, using a technique called "fracking"[1], in which wells are drilled and shale deposits are fractured by pumping chemicals known as "fracking fluid" into the wells, thus releasing the natural gas trapped within the shale deposits.

After defendants commenced Marcellus Shale extraction and production on these adjoining properties, on August 3, 2011, Kamuck filed this civil complaint. (Doc. 1.)  In his complaint, Kamuck alleged that the activities of the defendants, who are using "fracking" technology to extract natural gas from Marcellus Shale on these adjoining properties, was conducted in a manner that was harmful both to the plaintiff and his property.  Kamuck's initial, counseled complaint then brought ten separate claims, sounding both in contract and in tort.  Thus, Kamuck brought a claim against the defendants for breach of contract under the Copp Lease, (Id., Count 1); for breach

---

[1]"Fracking" or "hydrofracturing is a process in which pressurized fluids are used to dislodge and release natural gas from deep underground formations." Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506, 510 (M.D.Pa. 2010).

of a duty of good faith and fair dealing (<u>Id.</u>, Count 2); declaratory judgment counts seeking declarations interpreting and invalidating aspects of the Copp Lease and amendments, (<u>Id.</u>, Counts 3,4 and 5); a claim for anticipatory trespass, (<u>Id.</u>, Count 6); a count alleging that the defendants' activities constitute a private nuisance, (<u>Id.</u>, Count 8); a count alleging negligence by the defendants in their Marcellus Shale drilling operations, (<u>Id.</u>, Count 9); and a count asserting strict liability based upon the theory that natural gas extraction through "fracking" is an ultra hazardous activity, (<u>Id.</u>, Count 10).

The defendants moved to dismiss this complaint in its entirety, alleging that none of Kamuck's tort or contract claims state a claim upon which relief may be granted.  (Doc.11.)  In addition, the defendants filed a motion to strike a series of averments from the complaint relating to punitive damages, attorneys' fees, and claims for emotional distress. (Doc. 13.) Following briefing of these issues, in April of 2012, the motion to dismiss was granted with respect to the plaintiff's contract-based claims, as well as the plaintiff's anticipatory trespass claim, negligence *per se* claim, and gross negligence claim, but denied with respect to Kamuck's negligence, strict liability and nuisance claims, the sole surviving claims in this lawsuit.  (Doc. 39.)  Upon the consent of the parties, this matter was then reassigned to the undersigned for trial. (Doc. 40.)

What then followed was the slow disintegration of Kamuck's case.  While we initially set discovery and pretrial schedules for this case which would have completed discovery in 2012, those efforts were hobbled by an increasingly dysfunctional relationship between the plaintiff and his attorney.  By January of 2013, this relationship was irretrievably broken, with the plaintiff refusing to speak with his own counsel or even look at counsel during the course of a mediation conducted by the Court on January 25, 2013.  (Doc. 66.)  Presented with Mr. Kamuck's increasingly erratic conduct and stubborn refusal to co-operate or communicate with his own counsel, we granted plaintiff's counsel leave to withdraw and directed Mr. Kamuck to report to us by April 22, 2013, regarding his efforts to obtain new counsel.  (Doc. 67.)

We then, sadly, began receiving communications from Mr. Kamuck which suggested that his expectations for this litigation were wholly divorced from reality.  Specifically, Mr. Kamuck adopted a posture that would repeat itself throughout this litigation, a posture in which he reported that he was unable to retain counsel, suggested that he was unwilling or unable to conduct discovery, and failed to meet litigation deadlines, but persisted in requesting that we schedule further mediation efforts on his behalf, efforts that were unavailing given the plaintiff's unwillingness to compromise his position.  (Docs. 68 and 70.)

Mr. Kamuck's approach to this litigation, which entailed neither advancing nor retreating, soon began to effect the scheduling of this case to the profound prejudice of the defendants.  Thus, we were compelled to extend the deadline for preparation of a case management schedule in May 2013 due to delays on Mr. Kamuck's part in participating in this process, something he was required to do.  (Docs. 72 and 74.) Despite providing Mr. Kamuck with an extension of time in which to participate in the formulation of a case management plan, when the extended deadline for submission of this plan arrived, Mr. Kamuck once again declined to participate in this process, and the defendants were compelled to unilaterally submit a proposed case management plan.  (Doc. 75.)

In May 31, 2013, we conducted a case management conference with Mr. Kamuck and defense counsel.  (Doc. 91, ¶¶53 and 54.)  In order to eliminate any prejudice to Mr. Kamuck, at that time we directed the defense to provide the plaintiff with a complete set of the discovery materials previously given to Kamuck's former counsel, and the defense complied with this direction.  (Id.)  We also stressed to Mr. Kamuck the importance of his compliance with all discovery and litigation obligations, even if he proceeded *pro se* and while he was continuing his search for new counsel.  (Id.)  On June 11, 2013, we then set a case management schedule which called for completion of discovery , including expert discovery, by October 28, 2013.

(Doc. 77.) We also instructed Mr. Kamuck, who was now proceeding *pro se*, on his responsibilities as a litigant to comply with court orders.

What followed then were several months of apparent indifference and inaction by Mr. Kamuck regarding his responsibilities in this litigation which he had instigated. Thus, on June 21, 2013, defendants' counsel wrote a letter to Mr. Kamuck describing a series of discovery failures and deficiencies on the part of the plaintiff. These deficiencies included Kamuck's failure to provide a computation of damages, failure to provide documents requested by defendants, incomplete and missing responses to interrogatories served by defendants, and incomplete or incorrect responses to defendants' requests for admission. (Doc. 91, ¶56.) Mr. Kamuck did not cure these deficiencies. Accordingly, one month later, on July 25, 2013, defendants sent a follow-up letter to Mr. Kamuck noting that he had failed to respond to the June 21 correspondence and reminding him of his obligations under the Federal Rules of Civil Procedure. Mr. Kamuck failed to respond to this letter as well.

Despite allowing several months for completion of discovery, Mr. Kamuck also did not make himself available for the scheduling of his own deposition by the defendants, another rudimentary duty of litigants. (Doc. 78.) Thus, on September 5, 2013, defendants noticed the deposition of Mr. Kamuck for the first time, scheduling the deposition to take place on September 30, 2013, which was also the close of fact discovery pursuant to the Court's June 11, 2013, case management order. (Doc. 91,

¶58.)  Shortly before this deposition was scheduled to take place, on September 25, 2013, defense counsel was informed that Mr. Kamuck would not attend this deposition.  (Doc. 91, ¶59.)[2]  In accordance with Mr. Kamuck's wishes, on October 4, 2013, defendants noticed the deposition of plaintiff for the second time, scheduling the deposition to take place on October 18, 2013.  (Id., ¶61.)  On October 16, 2013, Kamuck once again informed counsel for defendants that he would not be attending this deposition as well because of his inability to retain counsel.  (Id., ¶62.)  Moreover, no medical records were produced by Mr. Kamuck regarding his alleged medical issues, despite a pending document requests for all medical records.  (Id., ¶60.)  Mr. Kamuck also neglected to provide the defense any expert reports, as required by our prior case management order.  (Doc. 78.)  These failures on Mr. Kamuck's part compelled the defendants to seek an extension of the defendants' own expert report deadlines, (Doc. 78.), a request which as granted by the Court.  (Doc.79.)  On October 18, 2013, defense counsel also reminded Mr. Kamuck in writing of his obligations under the Federal Rules of Civil Procedure, and notified him that they reserved the right to seek sanctions for his repeated cancellations of his deposition, including

---

[2]This notice was received from an attorney, John Molnar, who had sporadically interposed himself in this case.  Because Mr. Molnar's intermittent involvement added to the confusion in this case we directed him to clarify his role in this matter in January of 2014, and we were informed that Mr. Molnar was not entering an appearance in this case.  (Doc. 101.)  For the past year we have neither seen, nor heard, from Mr. Molnar

precluding Mr. Kamuck from offering certain testimony in opposition to a motion for summary judgment.  (Doc. 91, ¶63.)

At no time between June and October of 2013 did Mr. Kamuck provide any explanations to the Court for his on-going failure to cooperate with counsel, comply with his discovery obligations, or meet court ordered deadlines.  Finally, on October 25, 2013, we received a communication from Mr. Kamuck, which attributed all of his difficulties to the failure of his former counsel to provide him some unspecified files and materials.  (Doc. 80.)  We promptly acted upon this matter, scheduling a conference call in this case on November 21, 2013.  (Doc. 84.)  During this conference, we learned that there was very little in discovery that Mr. Kamuck did not already have from his former counsel.  We then strongly stressed to Mr. Kamuck the importance of complying with his discovery obligations, including showing up for his deposition, and advised him that dismissal of his claims was a potential consequence for failure to comply with discovery.  (Doc. 91, ¶¶66-7.)

Following this conference, we then set a timetable for the release of any materials to Mr. Kamuck by his former counsel, and scheduled the much delayed deposition of Mr. Kamuck for January 3, 2014.  We also directed Mr. Kamuck to cure all of his discovery delinquencies by January 3, 2014.  (Id.)  Finally, we warned Mr. Kamuck in clear and precise terms of his obligations as a litigant and the consequences which would flow from a failure to fulfill those obligations, stating that: "In closing,

we emphasize for the plaintiff that Rule 41(b) of the Federal Rules of Civil Procedure provides that: 'If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it.' The rule thus compels a plaintiff who has initiated a civil action against a defendant to comply with all court orders, and to ensure that the civil action is prosecuted timely. The rule also makes clear that the failure to prosecute an action, or the failure to comply with court orders like the order being issued today, may result in the involuntary dismissal of a lawsuit. Accordingly, the plaintiff is hereby expressly advised that any further failure to comply with case-management deadlines the discovery process, and court orders may result in the dismissal of this action." (Id.)

On November 27, 2013, defendants noticed the deposition of Mr. Kamuck for the third time, scheduling the deposition to take place on January 3, 2014, in order to give the plaintiff the maximum amount of time to respond to defendants' outstanding discovery requests. (Doc. 91, ¶71.) Two weeks later, on December 11, 2013, defendants sent yet another letter to Mr. Kamuck detailing his on-going failure to comply with his outstanding discovery obligations. (Id., ¶72.)

Despite knowing of the third scheduled deposition for more than a month, on January 2, 2014–one day before the deposition was to take place–Mr. Kamuck caused the defendants to be notified that "the depositions must be cancelled and rescheduled."

(Id., ¶78.)   When defense counsel declined to cancel the deposition, they were

informed that "Mr. Kamuck will not be attending the deposition tomorrow." (Id.,

¶80.)  Thus, Mr. Kamuck has never submitted to a deposition, and more than a year

has elapsed since he last refused to be deposed.  Moreover, the ostensible reasons for

at least some of these delays was that Mr. Kamuck was retaining counsel, (Id., ¶¶73-

78), however, in the ensuing months no attorney has entered an appearance on behalf

of the plaintiff despite the ample opportunity we have afforded to Mr. Kamuck

throughout this litigation to secure counsel.   Thus, the posture of the case has

remained precisely where Mr. Kamuck has left it for the past year, with the plaintiff

unwilling to proceed with the litigation, and unprepared to support or defend the

claims which he has made.

     It is against this procedural backdrop that the defendants filed a motion for

summary judgment on January 17, 2014.  (Doc. 90.)  That thoroughly documented

motion revealed an absolute paucity of proof on Mr. Kamuck's part supporting his

remaining negligence, strict liability and nuisance claims.   Thus, the undisputed

factual receord filed by the defendants in support of their motion for summary

judgment revealed the following:

     At the outset, Mr. Kamuck's claims failed as to some of the defendants named

in this action because, despite requests from defendants, Mr. Kamuck has not

produced any documentation or evidence demonstrating that Shell GP had any involvement in the activities which form the basis of this action, and has not produced any evidence contradicting defendants' assertion that another named defendant, Shell LP, no longer exists as a legal entity. (Doc. 91, ¶¶6-8.)

Furthermore, despite years of litigation Mr. Kamuck has produced no evidence to support many of the allegations which he initially made in this case. For example, Mr. Kamuck has never identified the time, date, location, or extent any toxic chemical release that he alleges took place on any part of the Kamuck Property or adjoining properties. Neither has Mr. Kamuck identified any toxic substances that were allegedly released on his property. (Id., ¶15.) Mr. Kamuck has also failed to produce any evidence identifying specific environmental contamination, fire, explosion or any other hydro-carbon production mishap that affected his well-being or property. (Id.) Nor has he presented any competent proof supporting his nuisance claims relating to vehicle traffic and the alleged spraying of toxic chemicals on the roadway adjoining his land. (Id.)

In fact, the plaintiff's own soil and water testing revealed the presence of no harmful contaminants on Mr. Kamuck's property or in his drinking water. (Id., ¶¶16-28.) Further, Mr. Kamuck has proffered no timely, competent expert reports attesting to a causal connection between hydro-carbon production and injuries that Mr. Kamuck

has claimed to either his person or his property.  (Id.)  Nor has Mr. Kamuck tendered

any evidence regarding any loss of property value, such as independent appraisals of

the Kamuck Property, as a result of this hydro-carbon extraction on adjoining lands

and Mr. Kamuck has not presented any evidence that he has had to spend money to

remedy any property damage to the Kamuck Property suffered as a result of

defendants' activities. (Id.)

Likewise, Mr. Kamuck's private nuisance claims remain factually unsupported.

These claims were based upon the traffic levels on the road adjacent to Kamuck's

property, but Kamuck presented no expert testimony or evidence regarding "proof of

the level, of the illegal level, and of the damages" associated with the noise from the

use of Mudge Road, despite representations to the Court on October 24, 2011, that

such evidence existed and was available.  (Doc. 91, ¶40.)

Finally, with respect to Kamuck's strict liability claim, which entails a legal

determination of the societal risks and rewards of hydro-carbon extraction activities,

the defendants presented a thoroughly documented factual record in their summary

judgment motion.  That record revealed that there have been hundreds of wells drilled

in Tioga County, which have yielded millions of dollars in extraction fees for the

county. (Id., ¶85-86.)  The county has also benefitted through the payment of impact

fee allowances.  (Id., ¶¶87-89.)  Furthermore, numerous scientific and legislative

studies have concluded that natural gas extraction is not an abnormally dangerous activity of the type that would give rise to strict tort liability. (<u>Id</u>., ¶¶93-116.) In addition, these government and private studies have documented the positive economic impact of this activity, both in terms of billions of dollars in economic activity and tens of thousands of new jobs in the communities affected by this hydrocarbon extraction. (<u>Id</u>.) None of these matters have been addressed or rebutted in any way by Mr. Kamuck.

Presented with this comprehensively documented dispositive motion Mr. Kamuck initially sought familiar refuge in delay, (Doc 97.), a request which we granted. (Doc. 99.) At the time that we granted this request, though, we notified Mr. Kamuck of the legal consequences which could flow from his failure to timely and fully respond to defense motions, advising him that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and instructing him that it is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc</u>., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).

Therefore, a failure to comply with this basic responsibility could result in the motion being deemed unopposed and granted.  (Doc. 99.)

When Mr. Kamuck did respond to this dispositive motion, his response was not responsive to many of the issues raised by that motion.  (Doc. 100.)  Thus, Mr. Kamuck did not submit a counter-statement of facts opposing this summary judgment motion, as required by Local Rule 56.1.  Nor did he advance any legal arguments through a brief in opposition to this motion, as also required under the Rules of this Court.  Instead, Mr. Kamuck's response simply repeated what were now familiar refrains in this litigation, coupling complaints about past counsel with promises of new counsel, and an insistence that the defendants should settle his case on terms the plaintiff deemed favorable.  (Id.)

This response was also procedurally flawed in another fundamental respect.  In an apparent effort to create some sort of factual dispute, Mr. Kamuck attached three documents styled as "affidavits" to his pleading.  (Id.)  However, a cursory review of these documents revealed that none of them are affidavits executed under penalty of perjury, a fact which rendered the documents worthless from an evidentiary stand point since "[t]he failure to acknowledge the penalty of perjury prevents the court from considering the affidavits' contents for purposes of summary judgment.  Tukesbrey v. Midwest Transit, Inc., 822 F.Supp. 1192, 1198 (W.D.Pa.1993) (non-conforming,

unsworn materials to be stricken); see also Nissho–Iwai American Corp. v. Kline, 845 F.2d 1300, 1305–06 (5th Cir.1988) (non-conforming, unsworn affidavits treated as 'incompetent to raise a fact issue precluding summary judgment')." United States v. Branella, 972 F. Supp. 294, 300 (D.N.J. 1997).

The defendants promptly identified this basic deficiency in Mr. Kamuck's response and moved to strike these non-evidentiary materials. (Doc. 103.) Presented with this legal challenge, Mr. Kamuck turned to what had, sadly, become another familiar refuge for this litigant, passive inaction. Indeed, in the intervening months, Mr. Kamuck has never elected to respond to this motion in any fashion, a failure which now permits us to deem the motion to be unopposed.

Mindful of the fact that Mr. Kamuck's pleadings had insisted that he was actively securing counsel, we have allowed an extended period of time to pass since these motions were filed in order to afford Mr. Kamuck every opportunity to fulfill the commitments he had previously made to this court to obtain counsel and actively pursue these claims. Regrettably, Mr. Kamuck's actions have not matched his statements, and despite being afforded many months by the court to take further action in this case, he has not secured counsel, further responded to these motions, or taken any steps to actively litigate the claims which he has brought.

It is against this stark, sad backdrop of inaction, and non-compliance with court requirements, that we now consider these dispositive motions.  For the reasons set forth below, the motions will be granted and the case will be dismissed.

**II.**   **Discussion**

    **A.**   **Under The Rules of This Court This Motion to Strike Should Be Deemed Unopposed and Granted**.

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in the defendants' motion to strike, (Doc. 103.), since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case.  This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*.  Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition.  A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>, No. 09-1704,  2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).

In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion to strike.  Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth:  we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve cases on their merits whenever possible.  However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6, by filing a timely response to this  motion to strike. These failures now compel us to apply the sanction called for under Rule 7.6, and deem the plaintiff to not oppose this motion.

## B.   Dismissal of this Case Is Also Warranted Under Rule 41

Dismissal of this action is also warranted under Rule 41 of the Federal Rules of Civil Procedure due to Kamuck's repeated failure to prosecute this case over the past two years. Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If  the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while

broad is governed by certain factors, commonly referred to as <u>Poulis</u> factors.  As the

United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to

determine whether a District Court has abused its discretion in dismissing for failure

to prosecute." <u>Lopez v. Cousins</u>, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting

<u>Briscoe v. Klem</u>, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the <u>Poulis</u>

factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether

a District Court abused its discretion in dismissing a plaintiff's case. <u>Mindek v.</u>

<u>Rigatti</u>, 964 F.2d 1369, 1373 (3d Cir.1992)." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.

Consistent with this view, it is well-settled that " 'no single <u>Poulis</u> factor is

dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors

need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373."

Briscoe v. Klaus,  538 F.3d at 263.   Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.   See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.  In particular we note that dismissal is fully justified when a plaintiff, who has brought a lawsuit, repeatedly fails to appear for a deposition to test the veracity of the claims which he has made.  Huertas v. City of Philadelphia, 139 F. App'x 444, 446 (3d Cir. 2005).  A plaintiff cannot avoid this basic obligation by citing the fact that he is unrepresented. Even *pro se* litigants have an obligation to attend depositions.  Huertas v. City of Philadelphia, 139 F. App'x 444, 446 (3d Cir. 2005).  Further, courts have directly spoken to the type of willful avoidance of litigation responsibilities which has marked

Mr. Kamuck's approach to this lawsuit over the past two years, condemning the practice of avoiding depositions and generally "playing possum" when instructed to fulfill their litigation responsibilities.  See Fattah v. Beard, 214 F. App'x 230, 233 (3d Cir. 2007)(dismissal justified due to plaintiff's propensity to engage in "playing possum" when it is convenient for him).

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted).  Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . .  However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988).  It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.   In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).   Similarly, it is well-settled that the costs and delays caused by a plaintiff's failure to attend multiple depositors constitutes the type of prejudice which justifies dismissal of a complaint.   Huertas v. City of Philadelphia, 139 F. App'x 444, 446 (3d Cir. 2005), citing Hicks v. Feeney, 850 F.2d 152, 156 (3d Cir.1988) (finding the costs and time associated with scheduling unattended depositions was prejudicial).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.   In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d

at 260-61 (some citations omitted).  Here, the plaintiff has failed to respond to defense motions.  The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court.  Further, the plaintiff's "failure to appear for depositions after receiving adequate notice and his failure to pursue any protection from the District Court establishes a pattern of dilatory conduct.  See Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874–75 (3d Cir.1994)." Huertas v. City of Philadelphia, 139 F. App'x 444, 446 (3d Cir. 2005).  Thus, the plaintiff's conduct in this case, which entails years of delay and non-compliance with litigation obligations, now amply displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case,

failed to provide discovery, failed to respond to defense motions, failed to attend depositions and has violated the local rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative.  <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders,  repeatedly counseling the plaintiff on his obligations in this case, and giving Mr. Kamuck many months to come into compliance with our requirements we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him.  Furthermore, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, on the present record the plaintiff's claims fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

## C.      <u>Kamuck's Claims Fail on Their Merits on the Current Record</u>

Finally, and perhaps most fundamentally, on the current record, Mr. Kamuck's case fails on its merits.  This matter comes before us on a motion for summary judgment.  That motion creates clear and exacting burdens for a plaintiff, like Mr. Kamuck, burdens which we find that the plaintiff has failed to satisfy.

### 1.     Rule 56, Burden of Proof and Persuasion

Rule 56(a) of the Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Densely Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on

assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc.

v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with

particular force to parties who attempt to rely upon hearsay statements to establish

material issues of fact which would preclude summary judgment.  With respect to such

claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on

a motion for summary judgment [only] if they are capable of admission at trial."

Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir.

2000), citing  Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17

(3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that a
> party can not rely on hearsay evidence when opposing a motion for
> summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561
> (E.D.Mo.1996).   Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,
> does not permit its consideration at the summary judgment stage. Henry
> v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment.  Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug

Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by

. . . denying averments . . . without producing any supporting evidence of the denials."

Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).

Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse

party may not rest upon mere allegations or denial."  Fireman's Ins. Co. Of Newark

NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v.

Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient

to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the

opposing affidavit is also not sufficient."  Lockhart v. Hoenstine, 411 F.2d 455, 458

(3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to

rely merely upon bare assertions, conclusory allegations or suspicions."  Gans v.

Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519

(3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also

comply with Local Rule 56.1, which specifically directs a party opposing a motion for

summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted."  L.R. 56.1.  Under the Local Rules, the failure to follow these instructions  and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement.  This Local Rule serves several purposes.  First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute.  Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.'  477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).  A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas

v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## 2.   Kamuck's Response to this Summary Judgement Motion is Legally Insufficient

Judged against these benchmarks, Mr. Kamuck's response to this summary judgment motion is legally insufficient on multiple scores.  First, Mr. Kamuck has not contested the carefully documented factual assertions made by the defendants in their motion, as he is required to do under Local Rule 56.1.  Given this wholesale failure to comply with this Local Rule, we are entitled to deem the defendants' statement of facts, which is throughly documented, to be deemed admitted.  Ullrich v. U.S. Sec'y of Veterans Affairs, 457 F. App'x 132, 137 (3d Cir. 2012).

Second, Mr. Kamuck's apparent effort to fashion a factual dispute through the submission of unsworn documents which are incorrectly styled as affidavits, is plainly improper.  On this score it has long been recognized that an "unsworn report does not meet the requirements of Fed.R.Civ.P. 56(e) and 'is not competent to be considered on a motion for summary judgment.'  Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir.1989) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). " Jackson v. Eqyptian Navigation Co., 222 F. Supp. 2d 700,

709 (E.D. Pa. 2002) aff'd sub nom. Jackson v. Egyptian Navigation Co., 364 F.3d 113

(3d Cir. 2004).  As one court has aptly observed in this regard:

> Federal Rule of Civil Procedure 56(c)(1)(A) provides that a party asserting that a fact is genuinely disputed must support that assertion with particular parts of material in the record, such as an affidavit or declaration.  The United States Court of Appeals for the Third Circuit has found that unsworn testimony "is not competent to be considered on a motion for summary judgment." Fowle v. C & C Cola, 868 F.2d 59, 67 (3d Cir.1989) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1980)); see also Bock v. CVS Pharmacy, Inc., No. 07–CV–412, 2008 WL 3834266, at *3 (E.D.Pa. Aug.14, 2008) (refusing to consider an expert report when no sworn affidavit was provided with the report); Jackson v. Egyptian Navigation Co., 222 F.Supp.2d 700, 709 (E.D.Pa.2002) (finding that an unsworn expert report cannot be considered as evidence for a motion for summary judgment).

> Th[us] an unsworn declaration cannot be relied upon to defeat a motion for summary judgment. Faddish v. General Electric Co., No. 09–70626, 2010 WL 4146108 at *6 (E.D.Pa. Oct. 20, 2010) (Robreno, J.) (citing Woloszyn v. County of Lawrence, 396 F.3d 314, 323 (3d Cir.2005) (refusing to consider unsworn declaration of a lay witness)).  It is true that Federal Rule of Civil Procedure 56 was amended effective December of 2010 to provide that a declaration, that is an unsworn statement subscribed to under penalty of perjury, can substitute for an affidavit. See Fed.R.Civ.P. 56 advisory committee's note; see also Ray v. Pinnacle Health Hosps., Inc., 416 F.App'x, at 164 n. 8 (3d Cir.2010) (noting that "unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C § 1746").  However, a declaration that is not sworn to under penalty of perjury or accompanied by an affidavit is not proper support in disputing a fact in connection with a motion for summary judgment. Burrell v. Minnesota Mining Manufacturing Co., No. 08–87293, 2011 WL 5458324 (E.D. Pa. June 9, 2011) (Robreno, J.) (refusing to consider expert reports when no timely sworn affidavits were

provided with the reports and the reports were not sworn to under penalty of perjury).

Deuber v. Asbestos Corp., No. 10 02686, 2012 WL 7761244, at *1 (E.D. Pa. Oct. 15, 2012).

Judged by these settled guideposts, Mr. Kamuck's declarations simply are not competent proof of any fact and fail to create a disputed issue of fact which would defeat summary judgment.

These tardy submissions are flawed in yet another way.  After neglecting for years to fulfill his discovery obligations, and allowing the discovery deadlines in this case to lapse, it appears that Mr. Kamuck is attempting to belatedly identify some treating doctors as expert witnesses on both his health, and issues of medical causation.  This he may not do.  Rather, the exclusion of such tardy medical expert testimony on causation is typically the course followed by courts when they are presented with the tactic employed here, the submission of what purports to be a delinquent expert designation of treating physicians. Such treating physicians are routinely precluded from testifying as expert witnesses on causation when their claimed expert testimony has not been timely disclosed.  See e.g., Allen v. Parkland Sch. Dist., 230 F. App'x 189, 194 (3d Cir. 2007); Brooks v. Union Pac. R. Co., 620 F.3d 896, 900 (8th Cir. 2010); Kachigian v. Berkshire Life Ins. Co. of Am., No. CIV.A. 09 6217 DEA, 2013 WL 1338288, at *10 (D.N.J. Apr. 1, 2013).

In sum, Mr. Kamuck's response to this summary judgment motion is so fundamentally flawed that it is tantamount to no response at all.  Nonetheless we have independently assessed the merits of this summary judgment motion, albeit without the meaningful assistance of Mr. Kamuck.  Having conducted this assessment, we find that the defendants are entitled to summary judgment in their favor in this case.

### 3.    The Defendants Are Entitled to Summary Judgment

Finally, considered on its merits, and in light of the factual record presently before the court, it is evident that the defendants are entitled to summary judgment in their favor on the merits of Mr. Kamuck's last remaining claims in this lawsuit.

Turning first to Kamuck's strict liability claim, we do not write upon a blank slate in assessing this claim.  Quite the contrary, a number of cases have examined the application of the doctrine of strict tort liability in this setting.  See e.g., Ely v. Cabot Oil & Gas Corp., No. 3:09-CV-2284, 2014 WL 4071640 (M.D. Pa. Apr. 23, 2014); Tucker v. Southwestern Energy Co., No. 11-44, 2012 WL 528253 (E.D. Ark. Feb. 17, 2012); Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010). From these cases, a legal consensus has emerged.  First, it is generally agreed that Pennsylvania recognizes a strict liability cause of action in tort for abnormally dangerous and ultra hazardous activities.  See Berish v. Southwestern Energy

Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas

Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010).  In this regard:

> [T]he Superior Court of Pennsylvania, in several cases, has adopted
> Sections 519 and 520 of the Restatement (Second) of Torts for
> determining whether an activity is abnormally dangerous.  See, e.g.
> Diffenderfer v. Staner, 722 A.2d 1103, 1107 (1998) (adopting §§ 519 and
> 520 of the Restatement(Second) of Torts); Melso, 576 A.2d at 1002–03
> (same); Smith v. Weaver, 445 Pa.Super. 461, 665 A.2d 1215, 1219–20
> (1995) (same); Albig, 502 A.2d at 662–63 (same).

> Section 519 of the Restatement states, in pertinent part, that "[o]ne who
> carries on an abnormally dangerous activity is subject to liability for
> harm ... of another resulting from the activity, although he exercised the
> utmost care to prevent the harm." Restatement (Second) of Torts § 519(1)
> (1977); see also Diffenderfer, 722 A.2d at 1108 (1998) (applying this
> part of the Restatement). Section 520 enumerates a list of factors the
> court should consider in determining whether an activity is abnormally
> dangerous. These factors are as follows:

> (a) existence of a high degree of risk of some harm to the person, land or
> chattels of others;

> (b) likelihood that the harm that results from it will be great;

> (c) inability to eliminate the risk by the exercise of reasonable care;

> (d) extent to which the activity is not a matter of common usage;

> (e) inappropriateness of the activity to the place where it is carried on;
> and

> (f) extent to which its value to the community is outweighed by its
> dangerous attributes.
> Restatement (Second) of Torts §§ 520 (1977).

Banks v. Ashland Oil Co.,127 F.Supp.2d 679, 680-681 (E.D.Pa. 2001).

Applying the Restatement's multi-faceted test, courts agree that the question of whether a specific activity is abnormally dangerous and, thus, gives rise to strict tort liability, is a question of law for the court to resolve.  See e.g., Tucker v. Southwestern Energy, Co., No. 11-44, 2-012 WL 528253 (E.D. Ark. Feb. 17, 2012); Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702 (M.D. Pa. 2011); Fiorentino v. Cabot Oil & Gas Corp., 750 F.Supp.2d 506 (M.D.Pa. 2010); Banks v. Ashland Oil Co.,127 F.Supp.2d 679, 680-681 (E.D.Pa. 2001).  However, "since the determination of whether or not an activity is abnormally dangerous is fact-intensive, courts often wait until discovery is complete before making this determination. See Norma J. Fiorentino, et al. v. Cabot Oil & Gas Corp., No. 09–cv–2284, 750 F.Supp.2d 506, 2010 WL 4595524 (M.D.Pa. Nov. 15, 2010)." Berish v. Southwestern Energy Production Co., 763 F.Supp.2d 702, 705 (M.D.Pa. 2011).

Furthermore, we are mindful of the fact that, as a federal court exercising diversity jurisdiction, we are obliged to apply the substantive law of Pennsylvania to this dispute.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d. Cir. 2000). In this regard, we are constrained to observe that Pennsylvania courts have frequently rebuffed efforts in other closely-related factual contexts to label various oil and gas production activities as ultra-hazardous activities giving rise to strict tort liability. Melso v. Sun Pipe Line Co., 394 Pa. Super. 578, 586, 576 A.2d 999, 1003 (1990)

("The court below erred, in our opinion, in determining that the operation of a petroleum pipeline under Newtown Crossing was an abnormally dangerous activity."); Smith v. Weaver, 445 Pa. Super. 461, 470, 665 A.2d 1215, 1219 (1995)(underground storage tanks do not constitute an abnormally dangerous or ultra-hazardous condition on property).

Given this longstanding Pennsylvania case law rejecting the application of strict tort liability to the hydro-carbon extraction industry, the plaintiff essentially invites us to predict that the Pennsylvania courts will take a step which they have, thus far, steadfastly refused to take, and characterize oil and gas production activities as ultra-hazardous. Furthermore, Kamuck invites us to take this unprecedented step on factual record which is replete with evidence refuting his position and bereft of proof supporting his views. Instead the defendants have presented, without contradiction, evidence and argument that support their position that natural gas drilling activities, including hydraulic fracturing, do not constitute abnormally dangerous activities under Pennsylvania law giving rise to strict liability. Following a review of the record and the parties' arguments with respect to the six-factor test outlined above that courts use to determine whether an activity should be subjected to strict liability, and viewing this issue through the prism of Pennsylvania law, we find that the natural gas drilling activities challenged in this particular case are not abnormally dangerous, and strict

liability should not apply.  Our conclusion in this regard is in line with precedent in

this field within Pennsylvania, as courts have routinely declined to find that activities

relating to oil and gas drilling are abnormally dangerous.  See Meslo, 576 A.2d at

1003-04 (operation of pipeline in heavily populated urban area not abnormally

dangerous); Smith, 665 A.2d at 1219 (storage of gasoline underground not abnormally

dangerous, since it could be done safely, was common, and valuable to society).  This

conclusion is also in accord with legal authority in other jurisdictions, where courts

have reached similar conclusions on the facts presented in those cases.  See Indiana

Harbor Belt R. Co. v. Am. Cyanamid Co., 916 F.2d 1174, 1181 (7th Cir. 1990)

("Natural gas is both flammable and poisonous, but the operation of a natural gas well

is not an ultrahazardous activity."); Williams v. Amoco Prod. Co., 734 P.2d 1113,

1123 (Kan. 1987) ("[The] drilling and operation of natural gas wells is not an

abnormally dangerous activity.")  It also follows the prior precedent of this Court,

which has rejected identical strict liability claims.  Ely v. Cabot Oil & Gas Corp., No.

3:09-CV-2284, 2014 WL 4071640 (M.D. Pa. Apr. 23, 2014).  This claim, therefore,

fails.

Likewise, Kamuck's private nuisance claim is unavailing on this factual record.

Pennsylvania recognizes the "private nuisance" doctrine and "defines a 'private

nuisance' as 'a nontrespassory invasion of another's interest in the private use and

enjoyment of land.'" <u>Philadelphia Elec. Co. v. Hercules, Inc.</u>, 762 F.2d 303, 313 (3d

Cir. 1985).  In terms of defining what conditions constitute a private nuisance:

> [T]he Pennsylvania Supreme Court adopted section 822 of the Restatement (Second) of Torts as the test to determine the existence of a private nuisance.  That section provides as follows:
>
> § 822. General Rule
>
> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.
>
> The Restatement defines the extent of the invasion necessary to incur liability as follows:
>
> § 821F. Significant Harm
>
> There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose.

<u>Kembel v. Schlegel</u>,  478 A.2d 11, 14-15 (Pa. Super. Ct. 1984).

By describing a private nuisance in terms of conditions or activities which cause

"significant harm," Pennsylvania case law limits this doctrine to "harm of importance,

involving more than slight inconvenience or petty annoyance.  The law does not

concern itself with trifles, and, therefore, there must be a real and appreciable invasion

of the plaintiff's interests before he can have an action for either a public or a private

nuisance .... [I]n the case of a private nuisance, there must be a real and appreciable

interference with the plaintiff's use or enjoyment of his land before he can have a cause

of action." Id. Pennsylvania courts also recognize that "it is sometimes difficult to

determine whether the invasion is significant.  The standard for the determination of

significant character is the standard of normal persons or property in the particular

locality.  If normal persons living in the community would regard the invasion in

question as definitely offensive, seriously annoying or intolerable, then the invasion

is significant." Id.

These legal benchmarks, which call upon the courts to assess whether a

condition is a "slight inconvenience or petty annoyance," or constitutes something that

is "definitely offensive, seriously annoying or intolerable," necessarily entail an

assessment that goes beyond the pleadings and involves a factual evaluation of the

impact of a defendant's actions on others nearby.  However, Pennsylvania courts have

found that mere roadside noise and dust do not constitute a private nuisance.  See

Karpiak v, Russo, 450 Pa. Super. 471, 676 A.2d 270 (1996)(granting non-suit at trial

on private nuisance based upon dust and road noise claims).  Therefore, Mr. Kamuck

cannot establish nuisance tort liability based solely upon his annoyance at traffic

outside his home.   This is a fatal flaw in the instant case since, despite years of litigation, Kamuck has presented nothing to support this private nuisance claim beyond his subjective upset at the volume of road traffic he has experienced periodically outside his home on a public thoroughfare.   Such annoyance typically will not rise to the level of a nuisance.   See Karpiak v, Russo, 450 Pa. Super. 471, 676 A.2d 270 (1996).   Further Kamuck's prior complaints that potentially toxic fracking fluids have been sprayed, drained, and released on or near his property in ways which have tainted the ground water and streams on his land, simply have not been established by any competent proof, despite our efforts to provide Kamuck ample opportunity to marshal such proof.   Therefore, these allegations, which are now unadorned by any competent evidence, also fail.

Finally, we note that Kamuck's negligence claims also appear to fail, given the complete paucity of proof to support those claims.   "In order to prevail on a cause of action in negligence under Pennsylvania law, a plaintiff must establish:  (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another.   Morena [v. South Hills Health Sys., 462 A.2d 680, 684 n. 5 (Pa. 1983)] (citing Prosser, Law of Torts § 30, at 143 (4th ed. 1971))."   Kleinknecht

v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993). Here, due to Mr. Kamuck's inaction, and a complete failure of competent proof, we are unable to identify any duty breached by the defendants; any causal relationship between that duty and injuries to the plaintiff; and any ascertainable damages resulting from that injury. Given these failures of proof, and Mr. Kamuck's broader failings as a litigant, this claim also now fails as a matter of law and should be dismissed.

## IV.   Conclusion

In conclusion, we note that it appears that Mr. Kamuck commenced lawsuit in 2011 based upon his subjective belief that he had been wronged. But such subjective beliefs, standing alone, do not a lawsuit make. Our legal system is premised upon a creative clash of ideas, where parties are required to prove what they claim, and subject those claims to the crucible of discovery and litigation. A party, therefore, may not insist upon making accusations, yet resist legitimate efforts to test those accusations. Our system of law also requires all parties to comply with court orders and follow the rules of procedure that are designed as tools to secure the truth. When, as in this case, one party refuses to follow this course, fails to sustain their claims, and frustrates the efforts of the court and the opposing party to gather facts, and secure the truth, these failures can lead to only one end–dismissal of the action.

Accordingly, for the foregoing reasons, the defendants' motion to strike (Doc. 103.) and motion for summary judgment (Doc. 90.) are granted.

An appropriate order follows.

SO ORDERED this 25th day of March 2015.

**_S/ Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge